John Craiger (Bar No. 021731)
**POLSINELLI PC**
One East Washington St., Suite 1200
Phoenix, Arizona 85004
Telephone: (602) 650-2000
Facsimile: (602) 264-7033
E-Mail: jcraiger@polsinelli.com]

Matthew S. Layfield (*Pro Hac Vice*)
Michael A. Campbell (*Pro Hac Vice*)
Nick A. Griebel
**POLSINELLI PC**
100 S. Fourth Street, Suite 1000
St. Louis, Missouri 63102
Telephone: (314) 889-8000
Facsimile: (314) 231-1776
Email: mlayfield@polsinelli.com
   mcampbell@polsinelli.com
   ngriebel@polsinelli.com

*Attorneys for the Defendants Valliance Bank, Shelby Bruhn, and Katherine S. Bruhn*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>SKYLER AARON COOK,<br><br>Debtor. | Chapter 7 Proceedings<br><br>Case No. 2:20-bk-01730-EFB |
| JAMES E. CROSS, TRUSTEE,<br><br>Plaintiff,<br><br>vs.<br><br>VALLIANCE BANK, SHELBY BRUHN, and KATHERINE S. BRUHN,<br><br>Defendants. | Adversary No. 2:21-ap-00336-EFB<br><br>**DEFENDANTS' RESPONSE AND OBJECTION TO SKYLER COOK'S MOTION TO QUASH SUBPOENA TO AT&T MOBILITY, LLC TO PRODUCE DOCUMENTS** |

Defendants in this adversary proceeding, Valliance Bank, Shelby Bruhn, and Katherine S. Bruhn (collectively, "**Defendants**"), by and through undersigned counsel,

hereby submit this response and objection (this "**Response**") in opposition to the Motion to Quash Defendants' Subpoena to AT&T Mobility, LLC To Produce Documents [Docket No. 132] (the "**Motion to Quash**") filed by the Debtor Skyler Aaron Cook (the "**Debtor**").

## RELEVANT BACKGROUND

On April 24, 2023, Defendants served their Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case (the "**Debtor's Subpoena**") upon the Debtor's counsel. [A true copy of this Subpoena is attached hereto as **Exhibit A**]. Among other documents, the Debtor's Subpoena sought the Debtor's text messages with investors, partners, lenders, and creditors. (*See* **Exhibit A**, numbers 1 through 9). On May 8, 2023, the Debtor served Defendants with his Objections and Responses to Subpoena (the "**Debtor's Objections**") in which he provided the following response to requests to produce his communications with his investors, partners, lenders, and creditors: "Cook has already produced all relevant documents within his possession, custody, and control." [A true copy of the Debtor's Objections is attached hereto as **Exhibit B**]. The Debtor raised no objections with respect to privileged attorney-client communications or privileged spousal communications in the Debtor's Objections to request numbers 1 through 9 of the Debtor's Subpoena, which sought the Debtor's communications with various third parties. (*See* **Exhibit B**).

Along with the Debtor's Objections, the Debtor produced only four (4) documents, which consisted of three state court complaints against the Debtor, and a demand for arbitration. The Debtor's counsel (Rebecca Eaton) advised Defendants' counsel that the Trustee requested and obtained documents from the Debtor as part of his Rule 2004

Examination.[1] The Debtor's counsel agreed to share those documents with Defendants' counsel only after the entry of a Stipulated Amendment to Protective Order, which was entered on June 12, 2023. [Docket #115]. Thereafter, the Debtor's counsel produced a zip file containing certain documents. Upon review of the documents produced by the Debtor and the Trustee, it became apparent that the Debtor had not produced all of his emails or text messages with his investors.

Following multiple emails and meet and confer efforts, the Debtor's counsel also advised Defendant's counsel that:

- The only request to the Debtor for documents was the May 20, 2020 Order that was made by the U.S. Trustee, not the Trustee. (*See* **Exhibit C**).

- The Trustee did not make copies or take any forensic images of the Debtor's devices, including computers, cell phones, iPads, hard drives, and thumb drives.

- The Trustee did not ask the Debtor for access to his email accounts.

- The Debtor does not have any text messages, and he no longer has the phone that was used during the relevant period.

- The Debtor's counsel was "not aware of the trustee ever requesting Skyler to turn over his phone—Skyler has not been asked to produce anything related to the bankruptcy in over three years."

The Debtor's counsel also advised Defendants' counsel that the Debtor's old phone number was (214) 789-1746 (AT&T), and his current number is (480) 235-6455 (also AT&T). Accordingly, on June 27, 2023, Defendants filed their Notice of Intent to Serve Subpoena to Produce Documents on AT&T Mobility, LLC [Docket No. 120] (the "**Notice of**

---

[1] *See* Order Granting U.S. Trustee's Application for Production of Documents and Oral Examination of Skyler Aaron Cook Pursuant to F.R.B.P. 2004 (Doc #68) (the "**May 20, 2020 Order**") entered on May 15, 2020 in the Debtor's Bankruptcy Case No. 2:20-bk-01730-EPB. [A copy of the May 20, 2020 Order is attached hereto as **Exhibit C**].

**Subpoena**") and served the AT&T Subpoena (the "**AT&T Subpoena**") [Docket No. 121] on AT&T Mobility, LLC ("**AT&T**"). [*See* Notice of Subpoena and AT&T Subpoena attached hereto as **Exhibit D**]. On July 10, 2023, without first conferring with Defendants' counsel, the Debtor filed the Motion to Quash.

## RESPONSE AND OBJECTION

### I. DEFENDANTS SERVED THE DEBTOR WITH NOTICE OF THE SUBPOENA

The Debtor alleges that Defendants did not serve the Debtor with a copy of the Subpoena. [Motion to Quash, p. 2]. This is not accurate. As shown in the ECF notifications in this case, both the Notice of Subpoena and the AT&T Subpoena were emailed to the Debtor's counsel (Krystal Ahart) on the same day of the filing, June 27, 2023. [True copies of these ECF email notifications with respect to the Notice of Subpoena and AT&T Subpoena are collectively attached hereto as **Exhibit E**]. The Court should disregard this argument.

### II. FAILURE TO COMPLY WITH LOCAL RULE 7037-1

The Debtor filed the Motion to Quash without first making any effort to meet and confer with Defendants' counsel. Local Rule 7037-1 provides as follows:

> After personal consultation and a sincere effort to resolve a discovery dispute that cannot be resolved without Court intervention, the parties must promptly call chambers and await further instruction before filing a discovery related motion. Instructions for contacting chambers are set forth on the Judge's Procedures page of the Arizona Bankruptcy Court website located at www.azb.uscourts.gov. "Personal consultation" means a face-to-face meeting or phone discussion, in addition to emails, voicemails, and texts.

The Motion to Quash should therefore not be entertained. However, upon information and belief it has caused AT&T not to comply with the AT&T Subpoena, necessitating this Court's Orders with respect to the Motion to Quash.

However, Defendants' counsel also notes that the Debtor has since retained new counsel (David Frazee) with whom Defendants' counsel have held meet and confers concerning the AT&T Subpoena and other issues. Mr. Frazee advised that he expects to raise other objections to the Debtor's requirement to produce documents or comply with discovery requests, although these are not before the Court at this time. Defendants reserve the right to respond to any such arguments, if raised.

**III. THE DEBTOR'S ASSERTION OF TWO PRIVILEGES**

In the Motion to Quash, the Debtor alleges that "production of the substantive contents of text messages during the time period requested would necessarily include (a) privileged attorney-client communications and (b) privileged spousal communications." [Motion to Quash, pg. 2-3]. Although Defendants disagree with these arguments, Defendants submit that these privileges are easily resolved with respect to the AT&T Subpoena by the Debtor's identification of the telephone numbers of his attorneys and his spouse, which such numbers would be excluded from the contents of texts to be produced by AT&T. Defendants' counsel discussed this proposed resolution in a meet and confer with the Debtor's counsel (David Frazee) on August 2, 2023, and Defendants' counsel reasonably believes that this resolution may be acceptable to the Debtor. The Court's Order concerning the Motion to Quash can easily provide for this exclusion.

In the event these alleged privileges must be addressed by the Court, Defendants provide the following response. First, in his Third Amended Complaint, Trustee alleges that the Debtor perpetrated a scheme to defraud and breach fiduciary duties to creditors and partners. [Docket No. 139, ¶¶ 128, 161]. In his Rule 2004 Examination on August 12, 2020,

the Debtor also testified that his wife, Chelsea Cook, assisted him in the preparation of spreadsheets for CKE Holdings and financial reports for Buddy's Renovation and Handyman Services LLC ("**BRHS**"), entered into certain real estate contracts with the Debtor and others, and received transfers of money from BRHS. [Rule 2004 Exam, Aug. 12, 2020, pgs. 10, 64-65, 76-78, 93, 94, 146, and 151, copies of which will be provided if the Court requires these]. Accordingly, an exception to marital privilege may apply. See, e.g., *U.S. v. Miller*, 588 F.3d 897, 904 (5th Cir. 2009) ("We have recognized an exception to the confidential marital communications privilege for those 'conversations between husband and wife about crimes in which they are jointly participating ....'"); *U.S. v. Banks*, 556 F.3d 967, 974 (9th Cir. 2009) ("The marital communications privilege does not apply to statements made in furtherance of joint criminal activity."); *U.S. v. King*, 541 F.3d 1143 (5th Cir. 2008) (Conversations between husband and wife about crimes in which they are jointly participating when the conversations occur are not privileged).

Additionally, when the Debtor's bankruptcy case was converted to a Chapter 7 and the Trustee was appointed, the right to assert the attorney-client privilege for pre-petition communications no longer resides with the Debtor. To the contrary, it is now the Trustee's right to either assert or waive any attorney-client privilege that may have existed with respect to the Debtor's communications on behalf of BRHS prior to the bankruptcy filing. *Commodity Futures Trading Commn. v. Weintraub*, 471 U.S. 343 (1985) (Trustee of a corporation in bankruptcy has the power to waive corporation's attorney-client privilege with respect to prebankruptcy communications); *In re Hardwood P-G, Inc.*, 403 B.R. 445 (Bankr. W.D. Tex. 2009) (When a corporation declares bankruptcy, all of corporation's property

transfers to an estate managed by trustee, and bankruptcy trustee effectively becomes the debtor-corporation's management, with right to assert or waive the attorney-client privilege of the debtor-corporation); *In re Royce Homes, LP*, 449 B.R. 709 (Bankr. S.D. Tex. 2011) (Debtor-partnership's trustee holds the partnership's attorney-client privilege and has the power to waive the privilege with respect to pre-bankruptcy communications). In response to written discovery requests, the Trustee has not asserted any such objection on the basis of the Debtor's attorney-client communications with any attorneys he may have had prior to the bankruptcy filing.

Regardless, at this time, Defendants are not seeking to obtain the Debtor's communications with his wife, Chelsea Cook, or any attorneys with whom he may have communicated via text messages.

### III. THE STORED COMMUNICATIONS ACT

What the Debtor fails to inform this Court is that he was required by the May 20, 2020 Order to produce his text messages to the U.S. Trustee, long before the AT&T Subpoena was served.[2] Although the Debtor's counsel advised Defendants' counsel that the Debtor "no longer has the phone that was used during that period," the Debtor has not provided information concerning when he actually stopped using his phone, what happened to it, whether he still has access to his text messages and communications, and whether he had access to these messages and communications when he was subject to the May 20, 2020

---

[2] Moreover, the Debtor was required to preserve his text messages and other documents when he filed his Voluntary Petition in Bankruptcy on February 19, 2020, and when lawsuits were commenced against him by Brad Johnson on January 15, 2020 and Brian Shahan on November 19, 2019, and when a Demand for Arbitration was submitted against him by Brad Johnson on October 10, 2019. (Copies of such documents will be provided to the Court if requested).

Order. The Debtor raised no objections when he produced certain documents in response to the May 20, 2020 Order and when he attended his Rule 2004 Examination on August 12, 2020. The Debtor is also subject to the Debtor's Subpoena that seeks, among other documents, all of the Debtor's text messages with investors, partners, lenders, and creditors. (*See* **Exhibit A**, numbers 1 through 9).

One of the exceptions to the Stored Communications Act ("**SCA**") is the consent of the originator or addressee of the communications. 18 U.S.C. § 2702(b)(3). Because the Debtor himself was obligated to produce the requested text messages under the May 20, 2020 Order and the Debtor's Subpoena, and because he was obligated to preserve these text messages at earlier dates, he remains obligated to provide this consent to the production of his text messages. Similarly, the Debtor is not merely obligated to produce only text messages that are within his possession, but he is also obligated to produce documents that are within his "possession, custody, or control," such as the text messages with AT&T. *Flagg v. City of Detroit*, 252 F.R.D. 346 (E.D. Mich. 2008).

The discovery fight in *Flagg* is instructive. In that case, SkyTel previously provided text-messaging services to the city and city officials and still retained some of these messages. The city, two of the individual defendants, and SkyTel all argued that the SCA prohibited SkyTel, a third party, from producing any text messages sought by the plaintiff in subpoenas. Rather than addressing this question directly, the court found it "best to avoid" the question of document production sought from a third party by the subpoena, and instead treated the dispute as though the plaintiff had sought the SkyTel text messages by a Rule 34 request to the city. *Id*. at 347–48, 366 and n.2. The court concluded that was the "more straightforward

Case 2:21-ap-00336-EPB    Doc 154    Filed 08/04/23    Entered 08/04/23 16:07:22    Desc
90388184.2                  Main Document        Page 8 of 10

path" and ordered the city to do just that. *Id.* at 366; see *id.* at 358. The court concluded that the city had control over the archived text messages held by SkyTel because this includes the "legal right to obtain the documents on demand" and the party's "affirmative duty to seek that information reasonably available to him from his employees, agents, or others subject to his control." *Id.* at 353 (quoting *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995) and *Gray v. Faulkner*, 148 F.R.D. 220, 223 (N.D. Ind. 1992) (internal quotations omitted)). The court also cited examples of what might constitute control, including a contractual right to access documents held by a party's agent. *Id.* (citing, for example, *Anderson v. Cryovac Inc.*, 862 F.2d 910, 928–29 (1st Cir. 1988) and *In re Ruppert*, 309 F.2d 97, 98 (6th Cir. 1962)). The court rejected the city's argument that it could withhold its consent and held that the Rule 34 obligation to produce documents within a party's control overcomes a party's disinclination to exercise its control over documents. *Id.* That party's "consent" to disclosure of the document is compulsory. *Id.* at 363. The court ruled that the city "must give any consent that might be required under the SCA in order to permit SkyTel to retrieve communications from this archive and forward them" for production. *Id.* (emphasis added).

Even if the affected person or entity is not a party to litigation and subject to Rule 34, a party may obtain documents from that person or entity under the same standard of possession, custody, or control under Rule 45. For example, in *Thomas v. Deloitte Consulting LP*, No. 3:02-cv-0343-M, 2004 WL 1372954, at *4 (N.D. Tex. June 14, 2004), the court noted that third parties might not have affirmatively asked their banks for checks and statements sought by a subpoena. However, the court concluded that the meaning of "control" in Rule 45 means that the subpoena encompasses any documents that the third parties can obtain,

including the bank documents, and ordered the third parties to give the defendant their consent to obtain the documents directly if the parties did not obtain and produce them for the defendant. *Id.*

The same is true here. The Debtor himself was obligated to produce the requested text messages under the May 20, 2020 Order and the Debtor's Subpoena, and he remains obligated to provide this consent to the production of his text messages.

WHEREFORE, Defendants respectfully request that the Court deny the Motion to Quash in its entirety, order AT&T Mobility, LLC to produce the contents of the Debtor's text messages within five (5) days of entry of this Court's order denying the Motion to Quash, and order the Debtor to consent and/or obtain the contents of his text messages from AT&T and produce those messages to Defendants within five (5) days of entry of this Court's order denying the Motion to Quash, and for such other and further Orders as to the Court may seem just and proper in the premises.

RESPECTFULLY SUBMITTED this 4th day of August 2023.

                                        POLSINELLI PC

                                        By: */s/ Michael Campbell*
                                            Michael A. Campbell
                                            Matthew S. Layfield
                                            Nick A. Griebel
                                            *Attorneys for Defendants Valliance Bank, Shelby Bruhn, and Katherine S. Bruhn*

I hereby certify that on August 4, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants, which constitutes service, pursuant to L.R. Bankr. P. 9076-1:

*/s/ Rebecca O'Brien*