John Craiger (Bar No. 021731)
**POLSINELLI PC**
One East Washington St., Suite 1200
Phoenix, Arizona 85004
Telephone: (602) 650-2000
Facsimile: (602) 264-7033
E-Mail: jcraiger@polsinelli.com]

Matthew S. Layfield (*Pro Hac Vice*)
Michael A. Campbell (*Pro Hac Vice*)
Nick A. Griebel (*Pro Hac Vice*)
**POLSINELLI PC**
100 S. Fourth Street, Suite 1000
St. Louis, Missouri 63102
Telephone: (314) 889-8000
Facsimile: (314) 231-1776
Email: mlayfield@polsinelli.com
         mcampbell@polsinelli.com
         ngriebel@polsinelli.com

*Attorneys for the Defendants Valliance Bank,*
*Shelby Bruhn, and Katherine S. Bruhn*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>SKYLER AARON COOK,<br><br>　　　　　　　Debtor. | Chapter 7 Proceedings<br><br>Case No. 2:20-bk-01730-EFB |
| JAMES E. CROSS, TRUSTEE,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>VALLIANCE BANK, SHELBY BRUHN, and<br>KATHERINE S. BRUHN,<br><br>　　　　　　　Defendants. | Adversary No. 2:21-ap-00336-EFB<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COUNT VII (RICO) OF TRUSTEE'S THIRD AMENDED ADVERSARY COMPLAINT** |

# **TABLE OF CONTENTS**

**OVERVIEW OF MOTION TO DISMISS** ........................................................... 1

**BACKGROUND** ................................................................................................ 1

    **A.**   **The Debtor's Business Model** ........................................................... 1

    **B.**   **The Debtor's Finances**...................................................................... 2

    **C.**   **The Debtor's Relationship with Defendants** ................................. 3

    **D.**   **The Alleged RICO Enterprise and Pattern of Racketeering Activity** ................ 3

**STANDARD** ...................................................................................................... 5

**ARGUMENT** ..................................................................................................... 5

    **I.**   **The Trustee has Not Pled Wire Fraud.** .......................................... 6

    **II.**   **The Trustee Has Not Pled a "Pattern" of Racketeering Activity.** ....... 9

    **III.**   **The Trustee Lacks Standing To Pursue The RICO Claim.** ............ 11

    **IV.**   **The Doctrine of *In Pari Delicto* Bars The Trustee's RICO Claim.**................... 14

    **V.**   **The Trustee Fails to State a Claim Against Katherine Bruhn.**......................... 18

90479485.15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AllWaste, Inc. v. Hecht*,
    65 F.3d 1523 (9th Cir. 1995) ........................................................................ 11

*In re Arizona Theranos, Inc., Litig.*,
    308 F. Supp. 3d 1026 (D. Ariz. 2018) ............................................................ 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................... 5

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985) .................................. 16

*Bayshore Captial Advisors, LLC v. Creative Wealth Media Finance Corp.*,
    2023 WL 2751049 (S.D.N.Y. March 31, 2023) .............................................. 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................... 5

*In re Colusa Reg'l Med. Ctr.*,
    604 B.R. 839 (B.A.P. 9th Cir. 2019) .............................................................. 2

*In re Crown Vantage, Inc.*,
    2003 WL 25257821, *aff'd sub nom. Crown Paper Liquidating Tr. v.*
    *Pricewaterhousecoopers LLP*, 198 F. App'x 597 (9th Cir. 2006) ................. 15

*In re Diaz*,
    2011 WL 5838568 (B.A.P. 9th Cir. 2011) ...................................................... 2

*H.J. Inc. v. Northwestern Bell Telephone Co.*,
    492 U.S. 229 (1989) ...................................................................................... 9, 10

*Heinrich v. Waiting Angels Adoption Serv., Inc.*,
    668 F.3d 393 (6th Cir. 2012) ....................................................................... 10, 11

*Holmes v. Securities Inv. Protection Corp.*,
    503 U.S. 258 (1992) ...................................................................................... 11, 13

*Hughes v. Consol-Pennsylvania Coal Co.*,
    945 F.2d 594 (3d Cir. 1991), cert. denied, 504 U.S. 955 (1992) ..................... 10

*In re Hunt*,
    149 B.R. 96 (Bankr. N.D. Tex. 1992) ........................................................ 11, 12, 13

*Intelligent SCM, LLC v. Qannu PTY LTD.*,
   2015 WL 13916822 (C.D. Cal. Mar. 2, 2015)................................................................... 7

*J.D. Marshall Int'l, Inc. v. Redstart, Inc.*,
   935 F.2d 815 (7th Cir. 1991) ........................................................................... 10

*Kani-Di-Ki, LLC v. Sorenson*,
   723 Fed. Appx. 432 (9th Cir. 2018) ................................................................. 9

*Lawrence v. Hardy*,
   583 S.W.2d 795 (Tex. Ct. App. 1978)................................................................. 18

*In re Lipsky*,
   411 S.W.3d 530 (Tex. Ct. App. 2013)................................................................. 18

*Margaritis v. BAC Home Loans Servicing LP*,
   2012 WL 12885712 (D. Ariz. Mar. 9, 2012), *aff'd*, 579 Fed. Appx. 574
   (9th Cir. 2014) ........................................................................................... 8

*Martinez v. Cenlar FSB*,
   2014 WL 4354875 (D. Ariz. 2014) ................................................................. 2

*In re Mortg. Fund '08 LLC*,
   527 B.R. 351 (N.D. Cal. 2015) ....................................................................... 15

*Off. Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*,
   437 F.3d 1145 (11th Cir. 2006) ............................................... 14, 15, 16, 17

*O'Halloran v. First Union Nat. Bank of Florida*,
   350 F.3d 1197 ............................................................................................ 15

*Plaskett v. Wormuth*,
   18 F.4th 1072 (9th Cir. 2021) ....................................................................... 4

*Sanford v. MemberWorks, Inc.*,
   625 F.3d 550 (9th Cir. 2010) ............................................................. 6, 9, 11

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
   473 U.S. 479 (1985)................................................................................ 5, 6, 9

*Spool v. World Child Int'l Adoption Agency*,
   520 F.3d 178 (2d Cir. 2008) ......................................................................... 10

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ......................................................................... 8

*United States v. Hussain*,
   972 F.3d 1138 (9th Cir. 2020) ................................................................. 6, 7

*Vemco, Inc. v. Camardella*,
   23 F.3d 129 (6th Cir.), cert. denied, 513 U.S. 1017 (1994)............................................. 10

*Yagman v. Gilbert*,
   684 Fed. Appx. 625 (9th Cir. 2017) ................................................. 6, 9, 11, 18

*In re Yellow Cab Coop., Inc.*,
   602 B.R. 357 (Bankr. N.D. Cal. 2019) ............................................... 15

**Statutes**

11 U.S.C. § 362(a)..................................................................................... 15

11 U.S.C. § 541(a) ........................................................................ 12, 14, 15

18 U.S.C. § 1343 ............................................................................... 6, 7, 9

18 U.S.C. §§ 1962(c) and (d) .............................................. 1, 5, 11, 12, 14

18 U.S.C. § 1964(c)................................................................. 11, 12, 13

Bankruptcy Code § 541.................................................................. 12, 13

Bankruptcy Code § 544.................................................................. 12, 13

Bankruptcy Code § 547........................................................................ 12

Bankruptcy Code § 548........................................................................ 12

RICO section 1961(1) ............................................................................ 6

RICO section 1962(c)........................................................... 5, 8, 16, 18

**Other Authorities**

Black's Law Dictionary 794 (7th Ed.1999) ......................................... 16

Federal Rules of Civil Procedure Rule 12(b)(6) ........................... 1, 4, 19

Rule 9(b)................................................................... 6, 7, 8, 9, 18

Subchapter V Trustee's Report to Court and Creditors and Objection to Plan
   Confirmation, Case No. 2:20-bk-01730-EFB, Docket No. 121 ............................ 2, 9, 18

Defendants in this adversary proceeding, Valliance Bank ("**Valliance**"), Shelby Bruhn ("**Bruhn**"), and Katherine S. Bruhn ("**Katherine Bruhn**," and collectively with Valliance and Bruhn, "**Defendants**"), by and through undersigned counsel, hereby move this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this action by Rule 7012 of the Federal Rules of Bankruptcy Procedure, for an Order dismissing Count VII of the Third Amended Adversary Complaint [Docket No. 139] (the "**Complaint**"), for violation of 18 U.S.C. § 1962(d) (the "**RICO Claim**") of the Racketeer Influenced and Corrupt Organizations Act ("**RICO**"), filed by James E. Cross, as Chapter 7 Trustee (the "**Trustee**") for the estate of the Debtor Skyler Aaron Cook ("**Cook**" or the "**Debtor**"). In support of the Motion to Dismiss, Defendants respectfully state as follows:

## OVERVIEW OF MOTION TO DISMISS

The Trustee has failed to state his RICO Claim against Defendants, and it should be dismissed with prejudice for the following reasons: (1) the Trustee has failed to plead wire fraud; (2) the Trustee has not pled a pattern of related and continuous acts of racketeering; (3) the Trustee lacks standing to pursue the RICO claim; (4) the doctrine of *in pari delicto* bars the Trustee's RICO Claim; and (5) the Trustee fails to state a claim against Katherine Bruhn.

## BACKGROUND

Taking the Complaint in its most favorable light, the Trustee alleges the following.

### A.    The Debtor's Business Model

The Debtor purchased, rehabilitated, and sold houses in 2018 and 2019, primarily through Buddy's Renovation & Handyman Services, LLC ("**BRHS**"), of which he was an

owner. [Complaint, ¶¶ 19-20]. The Trustee alleges the Debtor entered into partnership agreements (the "**Partnership Agreements**") with investors that guaranteed certain returns, while providing fraudulent financial statements and falsely representing his business was profitable. [Complaint, ¶¶ 20, 23, 39]. The Trustee concedes the Partnership Agreements did not contain restrictions on the use of funds, which could be used as working capital. [Complaint, ¶ 23]. Nowhere does he allege Valliance even saw any of these Partnership Agreements or financial statements.

### B.     The Debtor's Finances

The Trustee alleges that BRHS had difficulties meeting payroll beginning in November 2018 and a net loss of $686,062.19 in 2018, but he fails to allege that Valliance had knowledge of this. [Complaint, ¶¶ 37, 38].[1] He alleges that in 2018, the Debtor opened accounts at Valliance, but he also reported that he maintained accounts at Wells Fargo in 2019. [Complaint, ¶¶ 28-29; Trustee's Report, pgs. 4-7]. He also alleges that the "Cook Enterprises" collected more than $4 million between May 2018 and August 2019, but he fails to allege whether these were deposited at Valliance or Wells Fargo, or that Valliance even knew of the Wells Fargo deposits. [Complaint, ¶ 40]. However, he reported that the Debtor made improper withdrawals and transfers from his ***Wells Fargo*** accounts. [Trustee's Report,

---

[1] The Trustee also filed reports with financial statements produced by the Debtor's CPA, the Badger CPA Firm ("**Badger CPA**"), showing this net loss in 2018, and a net loss of $167,701.18 at the end of 2019. [Complaint, ¶ 32; Subchapter V Trustee's Report to Court and Creditors and Objection to Plan Confirmation, Docket No. 121 (the "**Trustee's Report**"), pg. 10]. This Court may take judicial notice of the Trustee's Report and pleadings in the Bankruptcy Case. See *In re Colusa Reg'l Med. Ctr.*, 604 B.R. 839, 845 n. 2 (B.A.P. 9th Cir. 2019) (exercising discretion "to take judicial notice of documents electronically filed in the underlying bankruptcy case."); *See also, In re Diaz*, 2011 WL 5838568, at *3 (B.A.P. 9th Cir. 2011); *Martinez v. Cenlar FSB*, 2014 WL 4354875, at *2 (D. Ariz. 2014).

pgs. 4-7]. He also alleges that, as of August 29, 2019, the Debtor knew that BRHS had suffered a loss of over $3,000,000, but he fails to allege that Valliance had knowledge of this. [Trustee's Report, pg. 12].

### C. The Debtor's Relationship with Defendants

The Trustee also alleges that Valliance provided loans for the acquisition of properties on which BRHS would provide renovation services. [Complaint, ¶ 32]. He alleges the Debtor and his wife had become close family friends with and Katherine Bruhn. [Complaint, ¶ 26]. He alleges that Bruhn purchased three properties and hired BRHS to renovate them, and he speculates that this was a "possible violation of Valliance's code of conduct." [Complaint, ¶ 34]. He alleges that the Debtor bounced checks in accounts at Valliance, and bank employees emailed the Debtor on numerous occasions to notify him his accounts were overdrawn. [Complaint, ¶¶ 41-84]. Finally, he alleges that the Debtor's operating account had large deposits and low daily balances for the months of January 2019 – June 2019. [Complaint, ¶¶ 87-93]. He argues that these should have been investigated and reported as "suspicious" under Valliance's anti-money laundering (AML) program (Complaint, ¶ 86), but he fails to state how these gave Valliance notice of any fraud.

### D. The Alleged RICO Enterprise and Pattern of Racketeering Activity

The Trustee alleges that Valliance, Bruhn, and the Debtor formed a RICO Enterprise that conducted a pattern of racketeering activity. [Complaint, ¶ 182]. He alleges that the Debtor was the "ringleader" of the RICO Enterprise, and the Debtor made fraudulent representations to the Partners to obtain cash for BRHS. [Complaint, ¶ 177]. However, the Trustee fails to allege the content of these misrepresentations, or to whom they were made, and when.

90479485.15

The Trustee alleges that Valliance and Bruhn were responsible for providing loans to the Debtor's Partners and providing banking services. [Complaint, ¶ 178]. However, he fails to allege which of the Debtor's Partners borrowed money from Valliance. The Trustee argues that Bruhn and Valliance "participated in the solicitation of potential Partners, while simultaneously knowing that the Cook Enterprise was insolvent." [Complaint, ¶ 178]. However, he fails to allege how they participated in the solicitation, or how they knew the Cook Enterprise was insolvent, especially when the Debtor maintained accounts with at least three (3) different banks and there is no allegation the Debtor shared any financial statements or Partnership Agreements with Bruhn or Valliance.

The Trustee alleges that Defendants engaged in a "pattern" of wire fraud. [Complaint, ¶¶ 182-197]. The pattern allegedly consists of 23 investments listed in paragraph 40 of the Complaint. The alleged investments total $3,053,000 made by the Debtor's partners over a period of only one year and seven days. [Complaint, ¶¶ 40, 188]. However, the Trustee fails to allege whether these were investments deposited at Valliance, or even sent by wire. The Trustee generally alleges the "RICO Enterprise obtained money from the Partners under fraudulent or false premises by means of wire in interstate commerce when it communicated with the Partners to solicit and secure their investments." [Complaint, ¶ 194]. However, the Trustee fails to allege any specific misrepresentations, who communicated them and when, and to whom they were communicated.

The Trustee alleges that Bruhn and Valliance participated in the management and operation of the RICO Enterprise by providing banking services and loans to Partners and allowing the Debtor to continue banking despite overdrafts. [Complaint, ¶ 196].

90479485.15

**STANDARD**

The standard of review for a motion to dismiss under Rule 12(b)(6) is well-established. Courts consider whether, taking all well-pleaded factual allegations as true, the complaint contains enough facts to state a claim that is plausible on its face. *Plaskett v. Wormuth*, 18 F.4th 1072, 1083 (9th Cir. 2021). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to survive a motion to dismiss. *Id.* The complaint must not only provide the defendant with fair notice of a claim's basis, but it must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A plaintiff's obligation to provide the grounds for relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Twombly*, 550 U.S. at 555. Plaintiff's factual allegations must do more than create speculation or suspicion of a legally cognizable cause of action, they must show entitlement to relief. *Id.* at 555-56. To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under a viable legal theory. *Id.* at 556.

**ARGUMENT**

The Trustee seeks relief under 18 U.S.C. §§ 1962(c) and (d) of the RICO Act. [Complaint, ¶¶ 175, 181, 182, 200]. Accordingly, the Trustee must plead: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) (applying section 1962(c)). If the Trustee does not

90479485.15

plausibly allege a substantive RICO violation under section 1962(c), then his conspiracy claim under section 1962(d) fails as well. *Yagman v. Gilbert*, 684 Fed. Appx. 625, 627 (9th Cir. 2017) (citing *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010)). "In addition, the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima*, 473 U.S. at 496. The Trustee's RICO claim must be dismissed because he fails to plead a single act of racketeering, fails to plead a pattern of racketeering, and lacks standing. The Trustee's claims are also barred by the doctrine of *IN PARI DELICTO*. Regardless of all other considerations, the Trustee has not stated a RICO claim against Katherine Bruhn.

## I.    THE TRUSTEE HAS NOT PLED WIRE FRAUD.

As noted above, "*racketeering activity*" is an essential element of a RICO violation. *Sedima,* 473 U.S. at 496. Although section 1961(1) of the RICO Act lists over 50 crimes as acts of racketeering, the Trustee's RICO claim is predicated exclusively on wire fraud, 18 U.S.C. § 1343.[2] [Complaint, ¶¶ 182-197].

The Trustee does not cite the federal wire fraud statute in his 33-page Complaint, but for purposes of this motion, Defendants assume that the Trustee intends to allege violations of 18 U.S.C. § 1343. Accordingly, the Trustee is required to plead: (1) a scheme to defraud, (2) use of the wires in furtherance of the scheme, and (3) specific intent to deceive or defraud. *United States v. Hussain*, 972 F.3d 1138, 1143 (9th Cir. 2020). The Trustee's allegations of wire fraud are also subject to Rule 9(b). *In re Arizona Theranos, Inc., Litig.*, 308 F. Supp. 3d

---

[2] Although the Complaint includes allegations regarding federal anti-money laundering ("AML") obligations, AML is regulated by the Bank Secrecy Act ("**BSA**"), 31 U.S.C. § 5311, et seq. Valliance denies violating the BSA, but regardless, the Trustee does not allege that any AML violations were part of the pattern of racketeering. [Complaint, ¶¶ 182-197].

1026, 1059 (D. Ariz. 2018). In a civil RICO claim, Rule 9(b) requires that allegations of wire fraud "identify the time, place, and manner of each fraud plus the role of each defendant in each scheme, and the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Id.*

In Paragraph 188 of the Complaint, the Trustee alleges that "[t]he specific acts of wire fraud include each investment and corresponding transfer by Cook's Partners described in paragraph 40, above." However, Paragraph 40 merely states:

| Date | Investor/Creditor | Amount Invested | Claim No. |
|------|-------------------|-----------------|-----------|
| 8/22/2018 | Brad Johnson (dba Black Dog Homes) | $175,000 | 31 |
| 9/2/2018 | Mathew Delgadillo | $50,000 | 6 |
| 10/25/2018 | Steve Necessary | $250,000 | 12 |
| 11/14/2018 | Real Estate Future Investments, LLC | $100,000 | 25 |
| 11/19/2018 | Teresa K. Anderson | $50,000 | 21 |
| 12/4/2018 | Brad Johnson | $50,000 | 28 |
| 12/4/2018 | Ryan Moran | $125,000 | 29 |
| 12/20/2018 | Jeff and Brenda Thames | $200,000 | 15 |
| 4/17/2019 | Steve Necessary | $750,000 | 12 |
| 4/24/2019 | Haines Sharhiv, LLC | $200,000 | 22 |
| 5/3/2019 | Grayson Buster | $30,000 | 7 |
| 5/13/2019 | Dennis Rocke | $150,000 | 20 |
| 6/14/2019 | Real Estate Future Investments, LLC | $35,000 | 25 |
| 7/16/19-9/6/19 | CKE Realty Fund, LP | $305,000 | 26 |
| 7/25/2019 | Ohana Waiwai, LLC | $50,000 | 27 |
| 7/25/2019 | Ryan Moran | $50,000 | 29 |
| 7/29/2019 | Mathew Delgadillo | $100,000 | 6 |
| 8/16/2019 | Ohana Waiwai, LLC | $45,000 | 27 |
| 8/16/2019 | Ryan Moran | $35,000 | 29 |
| 8/29/2019 | Brian Shahan | $200,000 | 14 |
| | Caleb Thames | $20,000 | 19 |
| | Cam Dennis | $75,000 | 32 |
| | Quantum3 Group LLC | $8,000 | 40 |
| | **Total Claims by "Partners" against Cook:** [7] | **$3,053,000** | |

First, under 18 U.S.C. § 1343, the Trustee must plead "use of the wires in furtherance of the scheme." *Hussain*, 972 F.3d at 1143. Paragraph 40 fails to allege that the wires were used to facilitate any of the listed investments. Second, Paragraph 40 fails to allege the content of any misrepresentations, who sent/received the transmissions, when they were sent, and in what medium. *Intelligent SCM, LLC v. Qannu PTY LTD.*, 2015 WL 13916822, at *34-35

(C.D. Cal. Mar. 2, 2015) (dismissing fraud claim under Rule 9(b), where plaintiff failed to adequately plead the "who" and "where" of the fraud, the circumstances constituting the fraud, the content of the misrepresentations, and the manner in which they were communicated). The Complaint's other general and vague references to "wire fraud" fall far short of Rule 9(b)'s particularity standard. [Complaint, ¶¶ 182-197]

Third, Paragraph 40 also fails to allege which financial institution received the funds. The Debtor maintained deposit accounts with at least three (3) different banks. The Trustee's failure to allege that these funds were even deposited at Valliance, as opposed to Wells Fargo for example, is insufficient to comply with Rule 9(b). The Trustee cannot plausibly allege that Valliance has knowledge of or control over deposits made in other institutions.

Finally, the RICO Claim is rife with "group pleading," which impermissibly lumps the Defendants and the Debtor together and fails to state which party took specific actions or made false statements, when these occurred, and with respect to whom.[3] *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but … a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme."); *Margaritis v. BAC Home Loans Servicing LP*, 2012 WL 12885712, at *7 (D. Ariz. Mar. 9, 2012), *aff'd*, 579 Fed. Appx. 574 (9th Cir. 2014) (dismissing RICO claim because plaintiff failed to plead a "pattern of racketeering

---

[3] [*See, e.g.,* Complaint, ¶¶ 183 ("the RICO Enterprise engaged in related and continuous acts of wire fraud …"); 187 (the RICO Enterprise "used means of wire in interstate commerce to advance the scheme by … sending and receiving emails to Partners to solicit their investments … using emails and wire transfers sent by to and from the Partners . . . and using electronic processing centers … to receive the wire transfers and checks…"); 194 (the "RICO Enterprise obtained money from the Partners under fraudulent or false premises by means of wire in interstate commerce when it communicated with the Partners to solicit and secure their investments …").]

activity," where plaintiff failed to plead any predicate act committed by any defendant and merely lumped all defendants together).

Because the Trustee fails to plausibly and specifically plead a single violation of 18 U.S.C. § 1343, the Trustee fails to state a claim under either section 1962(c) or (d). *Yagman*, 684 Fed. Appx. at 627; *Sanford*, 625 F.3d at 559.

## II.    THE TRUSTEE HAS NOT PLED A "PATTERN" OF RACKETEERING ACTIVITY.

The RICO Act is intended to address "long-term criminal conduct." *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 242 (1989). Accordingly, the plaintiff must allege a "pattern" of racketeering. *Sedima,* 473 U.S. at 496.   A pattern consists of acts of racketeering that are "related" and "continuous." *H.J. Inc.*, 492 U.S. at 239. Even if the Court overlooks the fact that the Trustee has not specifically pled a single act of racketeering, the Trustee has certainly not pled a continuous pattern of racketeering.

"Continuity" is both a closed- and open-ended concept. *Id.* at 241. Acts of racketeering satisfy the "closed-ended" standard if they occurred over a "substantial period of time." *Id.* at 242. Even if paragraph 40 satisfied Rule 9(b)'s particularity standard, which it does not, the Trustee alleges that the "specific" acts of wire fraud listed in Paragraph 40 were limited to the period of August 22, 2018 through August 29, 2019. [Complaint, ¶¶ 40, 188.] At best, the Trustee alleges a pattern lasting only one year and seven days.[4] For purposes of RICO's closed-ended continuity standard, patterns lasting about one year are not sufficient. *See, e.g.,*

---

[4] The alleged "pattern" of racketeering activity involving Valliance is even shorter.  The Trustee's Report reveals that the Debtor withdrew sums from Wells Fargo – not Valliance -- between June and August 2019. [Trustee's Report, pgs. 4-7].  In other words, the last three months of the alleged 12-month pattern did not involve Valliance. *See Kani-Di-Ki, LLC v. Sorenson*, 723 Fed. Appx. 432, 434 (9th Cir. 2018) (pattern lasting 10 months was too short to establish closed-ended continuity).

*Hughes v. Consol-Pennsylvania Coal Co.*, 945 F.2d 594, 611 (3d Cir. 1991), cert. denied, 504 U.S. 955 (1992) ("[T]welve months is not a substantial period of time."); *Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir.), cert. denied, 513 U.S. 1017 (1994) (finding a seventeen month period insufficient to show continuity); *J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 935 F.2d 815, 821 (7th Cir. 1991) (concluding that thirteen months is not a substantial period of time); *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008) ("[W]e have 'never held a period of less than two years to constitute a substantial period of time.'"); *Bayshore Captial Advisors, LLC v. Creative Wealth Media Finance Corp.*, 2023 WL 2751049, at *26 (S.D.N.Y. March 31, 2023) (holding that predicate acts spanning from September 15, 2017 to July 3, 2019 were insufficient to establish closed-ended continuity). The Trustee's alleged pattern is simply too short to constitute closed-ended continuity.

The Trustee's allegations also preclude open-ended continuity. If the acts of racketeering are terminated by the intervention of a victim or law enforcement before they extend for a substantial period of time, open-ended continuity can be established if – at the time of intervention -- the acts threatened to extent indefinitely into the future, e.g., were part of an *ongoing* entity's way of doing business. *H.J. Inc.*, 492 U.S. at 242-243. "In the context of an open-ended period of racketeering activity, the threat of continuity must be viewed at the time the racketeering activity occurred." *Heinrich v. Waiting Angels Adoption Serv., Inc.*, 668 F.3d 393, 410 (6th Cir. 2012). The Trustee alleges that Defendants (not the victims or law enforcement) terminated their alleged acts of racketeering, long before this action was filed in December 2021. The Trustee alleges that the Cook Enterprises ceased operations in the Fall of 2019 and filed for bankruptcy on February 19, 2020. [Complaint, ¶ 3, 116.] Accordingly, the Trustee alleges that Defendants did not engage in acts of racketeering for a

substantial period and stopped the acts of racketeering under their own volition. When acts of racketeering are not ongoing at the time of intervention by the victims or law enforcement, the acts of racketeering do not pose a continuing threat and cannot satisfy *H.J. Inc.'s* open-ended continuity standard.[5]

Because the Trustee fails to allege a pattern of racketeering activity, the Trustee's RICO claims under both section 1962(c) and (d) must be dismissed. *Yagman*, 684 Fed. Appx. at 627; *Sanford*, 625 F.3d at 559.

## III.    THE TRUSTEE LACKS STANDING TO PURSUE THE RICO CLAIM.

In *Holmes v. Securities Inv. Protection Corp.*, 503 U.S. 258 (1992), the Supreme Court held that only directly injured plaintiffs have standing under RICO's civil remedy provision, 18 U.S.C. § 1964(c). In particular, the Supreme Court stated that "a plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts … stands[s] at too remote a distance to recover." *Id.* at 268-296. Because the Trustee alleges that the scheme to defraud directly injured Cook's partners (i.e., creditors) [Complaint, ¶¶ 35-40], the Trustee lacks standing under section 1964(c).

In re Hunt, 149 B.R. 96 (Bankr. N.D. Tex. 1992) is directly on point.  There, the bankruptcy court confirmed plans of reorganization and appointed two independent trustees of the resulting liquidating trusts. *Id*. at 98.  The trustees filed an adversary complaint that

---

[5] *Compare with AllWaste, Inc. v. Hecht*, 65 F.3d 1523, 1528-30 (9th Cir. 1995) (a pattern lasting 13 months was sufficiently continuous where the defendant employees' kickback scheme allegedly stopped only because the plaintiff employer discovered the kickbacks and terminated the employees); *Heinrich*, 668 F.3d at 410 (open-ended continuity was satisfied where the acts of racketeering last only two months but terminated only because the defendant's operations were shut down as part of a criminal prosecution).

sought to recover fraudulent conveyances and preferences between the debtors and defendants, who were alleged insiders or relatives of the debtors. *Id*. The trustees alleged that bankruptcy was inevitable for the debtors due to massive lawsuits, tax fiascos, and market declines, and the debtors and defendants succeeded in disposing of over $100 million in assets that would have been available to pay the claims of creditors. *Id*. at 99. The complaint asserted that the debtors and defendants violated 18 U.S.C. § 1962(c) and (d) by engaging in a series of transactions that defrauded the debtors' present and future creditors of approximately $130 million. *Id*.

The trustees' RICO claims were dismissed based on their lack of standing. Although the court recognized that "Section 1964(c) authorizes a private right of action by '[a]ny person injured in his business or property by reason of a violation of section 1962,'" the court noted that the Bankruptcy Code grants trustees the authority to pursue only specific kinds of actions that are derived exclusively from the trustee's capacity as a representative of the estate – specifically, claims that belong to the estate under § 541 and claims enumerated in §§ 544, 547, and 548. *Id*. at 101. The bankruptcy court noted that:

> The broad provision of § 541(a)(1) does include causes in action and claims by the debtor against others, but it is not intended to expand the debtor's rights against others beyond those that existed at the commencement of the case. The bankruptcy estate succeeds only to the same rights the debtor had on the date the case was commenced, plus recoveries from specific avoidance actions (under § 541(a)(3), discussed below). Under § 541(a)(1), then, the Independent Trustees may pursue their RICO claims against the defendants—the [debtors'] alleged co-conspirators—only to the extent that the [debtors] themselves could have done so at the time they filed their bankruptcy petitions.

Id.

90479485.15

17

The court noted that a co-conspirator in a fraudulent act cannot also be a victim entitled to recover damages. *Id*. The court held that because the liquidating trustee's complaint alleged that the debtors participated in acts giving rise to the RICO claims, the debtors would have been unable to sue the RICO defendants on the date of the bankruptcy filings. *Id*. at 102. The court also explained that under Section 544 of the Bankruptcy Code, a trustee steps into the shoes of a hypothetical contract claimant or a judgment creditor with an unsatisfied execution. *Id*. at 103. Accordingly, the court dismissed the RICO claims and held that only *actual* creditors could maintain RICO claims such as those at issue. *Id.* "[T]he trustee lacks standing to bring personal claims of creditors. The simple reason is that personal claims are not property of the estate." *Id*.; *see also Holmes*, 503 U.S. at 272 (the Supreme Court stated that "[t]he general tendency of the law, in regard to damages at least, is not to go beyond the first step").

Here, the Trustee lacks standing to pursue the RICO Claim *on the face of the Complaint*. Under Section 541, the Trustee succeeds only to the rights the Debtor had on the date the case was commenced, and he acquires no greater rights than the Debtor. He may only pursue his RICO Claim against Defendants to the extent the Debtor himself could have done so at the time he filed his bankruptcy petition. Because the Trustee's Complaint alleges that the Debtor participated in acts giving rise to the RICO Claim,[6] the Debtor himself would have been unable to sue the RICO defendants. *Hunt*, 149 B.R. at 102.

---

[6] The Complaint alleges that the Debtor fraudulently induced Partners to enter into Partnership Agreements to provide funds to BRHS by providing them with a false personal financial statement, and the Debtor was the ringleader of a criminal enterprise that engaged in wire fraud to obtain money under fraudulent or false pretense. [Complaint, ¶¶ 23(i), 39, 176-77, 183, 188, 194; *See also*, ¶¶ 85, 86, 109, 161].

90479485.15

Furthermore, under Section 544 of the Bankruptcy Code, to the extent the Debtor's creditors suffered any damages, those claims would belong to those creditors individually, and not the bankruptcy estate. The personal claims of creditors are not property of a bankruptcy estate. *Hunt*, 149 B.R. at 102. As such, the Trustee lacks standing under RICO's civil remedies provision, 18 U.S.C. § 1964(c).

## IV. THE DOCTRINE OF *IN PARI DELICTO* BARS THE TRUSTEE'S RICO CLAIM.

The similar, but separate doctrine of *in pari delicto* also requires dismissal of the RICO Claim on the face of the Complaint. *Off. Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145 (11th Cir. 2006) is directly on point. In that case, the trustee sued several defendants (collectively, "**IRA Custodians**") for violations of section 1962(c) and (d) of RICO, where they were large holders of individual retirement accounts. *Id.* The trustee alleged that the defendants aided the debtor ("**ETS**") in defrauding investors by funneling IRA funds into ETS payphone investments without conducting appropriate due diligence, enabling "thousands of investors to partake of the ETS scheme and caused ETS to incur millions of dollars in additional debt." *Id.* The IRA Custodians moved to dismiss the trustee's RICO claim based on the doctrine of *in pari delicto*, and the district court agreed, reasoning that, because the "legal and equitable interests of the debtor" in bankruptcy are only as strong as the debtor's claim against defendants at the commencement of the bankruptcy, 11 U.S.C. § 541(a), the doctrine of *in pari delicto* barred the RICO claim. *Id.* 1149.

On appeal, the court focused on two issues: (1) whether the trustee was subject to defenses that were available against the debtor, including the defense of *in pari delicto*, and (2) whether the defense of *in pari delicto* bars a RICO claim against a conspirator. As to the first issue, the trustee argued that *in pari delicto* depends on the "personal malfeasance of the

individual seeking to recover," and the wrongs of ETS should not be imputed to him as the bankruptcy trustee. *Id.* at 1150. However, the court noted that the text of section 541(a) is "unambiguous":

> Under the plain meaning of section 541(a), the debtor estate includes all "legal or equitable interests *of the debtor* as of the commencement of the case." 11 U.S.C. § 541(a) (emphasis added). "A bankruptcy trustee stands in the shoes of the debtor and has standing to bring any suit that the debtor could have instituted" when the debtor filed for bankruptcy, and there is no suggestion in the text of the Bankruptcy Code that the trustee acquires rights and interests *greater* than those of the debtor. *O'Halloran,* 350 F.3d at 1202; *see also* 11 U.S.C. § 362(a). If a claim of ETS would have been subject to the defense of *in pari delicto* at the commencement of the bankruptcy, then the same claim, when asserted by the trustee, is subject to the same affirmative defense.

*Id.* The trustee also argued that his recovery would ultimately inure to the benefit of innocent creditors instead of the wrongful debtor. However, the court noted that this argument failed to account for the likelihood that individual creditors that were damaged by the debtor's Ponzi scheme could also separately pursue claims against the IRA Custodians free from the bar of *in pari delicto*. *Id.* Finally, the court noted that although the issue was one of first impression in the Eleventh Circuit, all of its "sister circuits that have considered the issue have unanimously concluded that *in pari delicto* applies with equal force to a trustee in bankruptcy as a debtor outside of bankruptcy." *Id.* at 1151.[7]

---

[7] Courts in the Ninth Circuit have also followed the ubiquitous trend of applying *in pari delicto* to bankruptcy trustees. *In re Crown Vantage, Inc.,* 2003 WL 25257821, at *6, *aff'd sub nom. Crown Paper Liquidating Tr. v. Pricewaterhousecoopers LLP,* 198 F. App'x 597 (9th Cir. 2006) ("Although the Ninth Circuit has not had occasion to directly address the issue, every Circuit to have considered the question has held that *in pari delicto* can be asserted against a trustee bringing a claim on behalf of a debtor in bankruptcy."); *In re Yellow Cab Coop., Inc.,* 602 B.R. 357, 358-63 (Bankr. N.D. Cal. 2019) (applying doctrine of *in pari delicto* to dismiss bankruptcy trustee's complaint against debtor's former accountant for conspiracy and failure to comply with GAAP; "*in pari delicto*, or any other defense available against the debtor, can be asserted against the trustee."); *In re Mortg. Fund '08 LLC,* 527 B.R. 351, 366 (N.D. Cal. 2015).

As to the second issue, the trustee argued that the bankruptcy court erred in dismissing his RICO claims because the defense of *in pari delicto* would have been unavailable if it had been asserted against the debtor. *Id*. at 1152. In *Edwards*, the court began its analysis by explaining the doctrine as follows:

> The doctrine of *in pari delicto* is an equitable doctrine that states "a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." Black's Law Dictionary 794 (7th Ed.1999). This common law defense "derives from the Latin, *in pari delicto potior est conditio defendentis*: 'In a case of equal or mutual fault ... the position of the [defending] party ... is the better one.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306, 105 S.Ct. 2622, 2626, 86 L.Ed.2d 215 (1985). The doctrine of *in pari delicto* is based on the policy that "courts should not lend their good offices to mediating disputes among wrongdoers" and "denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality." *Id*.

Id. at 1152. Citing Supreme Court precedent, the court noted that the application of *in pari delicto* to causes of action created by federal statutes depends on two factors: (1) the plaintiffs' active participation in the violation *vel non*, and (2) the policy goals of the federal statute. *Id*. The court noted that both factors supported the application of *in pari delicto*. *Id*.

On the first factor, the court held that "it is beyond doubt that the allegations of the trustee's complaint render ETS in active participation with the IRA Custodians" under RICO section 1962(c). *Id*. The court noted that, if anything, the conduct of ETS was in *majore delicto*, as the trustee alleged that ETS: "devised the scheme and promoted and marketed the sale and leaseback of payphones as investment opportunities to individuals," "control[led] all aspects of the operation," "created marketing and promotional materials," and "promised returns ... of 14% or 15%." *Id*. Even though the trustee alleged that the IRA Custodians "enabled thousands of investors to partake of the ETS scheme and caused ETS to incur millions of dollars in additional debt," ETS was the party that "devised the scheme,"

90479485.15

transferred funds from IRA accounts, and "with the sale of each phone, … assumed a liability it could not satisfy." *Id.* The trustee was unable to explain how the IRA Custodians violated RICO while the debtor ETS was merely a passive bystander in their scheme to defraud, and accordingly, the court held that the allegations on the face of the complaint "logically compel the conclusion that ETS had 'substantially equal responsibility for [its] injury.'" *Id.*

On the second factor, the court held that the application of *in pari delicto* would advance the policy underlying civil liability under the federal RICO statute. *Id.* at 1155. Astonishingly, the trustee argued that a plaintiff should be allowed to recover to serve the deterrent purposes of RICO, regardless of whether the plaintiffs participated in the wrongdoing. *Id.* The court disagreed:

> "Congress intended RICO's civil remedies to help eradicate 'organized crime from the social fabric' by divesting 'the association of the fruits of ill-gotten gains.'" [The trustee's] recovery under RICO would not divest RICO violators of their ill-gotten gains; it would result in a wealth transfer among similarly situated conspirators.

*Id.* at 1155 (internal citations omitted). Because a federal RICO violation requires "affirmative and deliberate participation," and because a defendant must also "knowingly implement," "make decisions" and "direct" the pattern of racketeering activity, a complaint brought by ETS, outside of bankruptcy, against other members of its RICO conspiracy would have been barred by the doctrine of *in pari delicto*. *Id.* Accordingly, the court held the trustee was likewise barred from recovery because ETS was an active participant in the Ponzi scheme, the application of *in pari delicto* furthered the policy of the federal RICO statute, and the trustee's recovery "was barred based on the face of the complaint." *Id.* at 1156.

Here, the same is true. The Trustee steps into the shoes of the Debtor, his rights are confined to those of the Debtor and are no greater, and he is subject to the defenses that could

90479485.15

17

have been raised against the Debtor had he sued Defendants outside of bankruptcy. By the Trustee's own allegations, the Debtor perpetrated a scheme to defraud investors and induced some of them with a false personal financial statement to enter into Partnership Agreements. [Complaint, ¶¶ 23(i), 39, 85, 86, 109-113, 161]. The same allegations are made in the Trustee's Report. (Docket No. 121).[8] Accordingly, this Court must dismiss the RICO Claim.

## V. THE TRUSTEE FAILS TO STATE A CLAIM AGAINST KATHERINE BRUHN.

Katherine Bruhn was only named because she is the spouse of Bruhn. The Complaint contains only a single allegation that pertains to her: "Bruhn and Katherine S. Bruhn are husband and wife." [Complaint, ¶ 10]. As discussed above, the Trustee's RICO Claim is subject to the heightened pleading requirements of Rule 9(b). The Trustee has not alleged that Katherine Bruhn conspired to violate Section 1962(c), or agreed to commit any predicate acts, or even intended that any predicate acts would be committed. The Trustee has not even alleged that Katherine Bruhn formed part of the RICO Enterprise. Simply put, there is no allegation of any wrongdoing by Katherine Bruhn. [Complaint, ¶¶ 174-204]. Because a federal RICO violation requires "affirmative and deliberate participation," and because a defendant must also "knowingly implement," "make decisions," and "direct" the pattern of racketeering activity, and because a conspiracy to violate RICO requires a knowing agreement to commit at least two predicate acts, the RICO Claim against Katherine Bruhn must be dismissed. *See, Yagman* at 627; *In re Lipsky*, 411 S.W.3d 530, 547-48 (Tex. App. 2013); *Lawrence v. Hardy*, 583 S.W.2d 795, 799 (Tex. App. 1978). Even if Bruhn violated

---

[8] "The Trustee finds that BRHS operated at a loss at least beginning in late 2018 and was clearly a failing business for all of 2019. Despite this irrefutable evidence, Cook carried on as if the business were extremely profitable and solicited innocent third parties to invest in a business enterprise that had no real likelihood of paying any interest, let alone a return of principal." (p. 13).

1  RICO, which he did not, Katherine Bruhn would not be liable merely because she is married

2  to Bruhn.

3        WHEREFORE, Defendants respectfully request that the Court dismiss the Trustee's

4  RICO Claim, with prejudice, under Rule 12(b)(6), and for such other Orders as the Court

5  deems appropriate.

6
7  RESPECTFULLY SUBMITTED this 7th day of August, 2023.

8                                            POLSINELLI PC

9
                                             By: */s/ Michael Campbell*
10                                                Michael A. Campbell
                                                  Matthew S. Layfield
11                                                Nick A. Griebel
                                                  *Attorneys for Defendants Valliance Bank,*
12                                                *Shelby Bruhn, and Katherine S. Bruhn*

13
14        I hereby certify that on August 7, 2023, I electronically transmitted the foregoing
   document to the Clerk's Office using the CM/ECF System for filing and transmittal of a
15  Notice of Electronic Filing to all CM/ECF registrants, which constitutes service, pursuant to
   L.R. Bankr. P. 9076-1:
16
17
18  */s/ Rebecca O'Brien*

19
20
21
22
23
24
25
26
27
28

90479485.15