Alicia Barrs (Pro Hac Vice)
Barnes & Thornburg LLP
2121 N. Pearl Street, Suite 700
Dallas, TX 75021
Phone/Fax: (214) 258-4200/(214) 258-4199
Email: Alicia.RainesBarrs@btlaw.com

David Frazee (Pro Hac Vice)
Barnes & Thornburg LLP
555 12th Street N.W., Suite 1200
Washington, DC 20004
Phone/Fax: (202) 289-1313/(202) 289-1330
Email: David.Frazee@btlaw.com

Attorneys for Nonparty Skyler Aaron Cook

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>SKYLER AARON COOK,<br><br>        Debtor. | Chapter 7 Proceedings<br><br>Case No. 2:20-bk-01730-EFB |
| JAMES E. CROSS, TRUSTEE,<br><br>        Plaintiff,<br><br>vs.<br><br>VALLIANCE BANK, SHELBY BRUHN, and KATHERINE S. BRUHN,<br><br>        Defendants. | Adversary No. 2:21-ap-00336-EFB<br><br>**Court-Ordered Fifth Amendment Submission – Right to File a Reply Brief Requested** |

As directed by the Court on August 17, 2023, nonparty Skyler Cook ("Mr. Cook") submits this brief on the Fifth Amendment implications of Defendants' subpoena to Mr. Cook. Given the rights at stake, Mr. Cook requests the right to file a reply to Defendants' response brief (due September 15, 2023).

Simultaneously with the filing of this brief, Mr. Cook (as directed by the Court) serves the parties with amended subpoena responses that assert his Fifth Amendment rights.

## I. Introduction

The Trustee's complaint against Defendants centers on a "fraudulent scheme" allegedly involving Mr. Cook with Defendants' participation, but Mr. Cook is not a party to this adversary proceeding. Doc. 139 ¶ 1. All of the allegations have criminal implications for those involved, including Mr. Cook. As a result, all documentation relevant to this action necessarily implicates the Fifth Amendment.

In this proceeding, Defendants served a document subpoena on Mr. Cook seeking 22 broad-ranging categories of documents. *See* Doc. 154-1. Since then, through briefing and oral argument (at the August 17 hearing), Defendants have seemingly narrowed the subpoena to one—albeit extremely broad—category of documents: all of Mr. Cook's emails and text messages with investors.[1] *See, e.g.*, Doc. 154. Although Mr. Cook previously produced (to the Trustee's satisfaction) documents in the underlying bankruptcy proceeding (in which he was the debtor), Mr. Cook has invoked his Fifth Amendment right to any new production in response to the subpoena.

As mentioned, this proceeding concerns only Mr. Cook and Defendants' alleged criminal activity. As such, if Mr. Cook has any additional communications that are responsive to the subpoena, the production of such communications or a privilege log listing such communications could potentially result in the disclosure of directly incriminating evidence or an indirect link to incriminating evidence. As such, under

---

[1] Notably, Defendants seek emails from two accounts that, as Mr. Cook explained to Defendants, were discontinued before Mr. Cook filed for bankruptcy. Thus, even if ordered to produce emails, it is unclear whether Mr. Cook can recover emails from those two accounts.

well-established law, Mr. Cook may invoke the Fifth Amendment and refuse to respond further to the subpoena.[2]

## II. Argument

A. **Legal standard.**

    a. **The Fifth Amendment established a bedrock protection against self-incrimination.**

The Fifth Amendment enshrines a bedrock principal of our democracy: "No person shall [] be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V; *Hoffman v. United States*, 341 U.S. 479, 486 (1951) (stating that the Fifth Amendment must be liberally construed). This principal extends beyond criminal proceedings: "the Fifth Amendment's protections against self-incrimination can be asserted in any proceeding, be it civil, criminal, administrative, judicial, investigative or adjudicatory." *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000). The privilege applies in a civil case where a person reasonably believes that his disclosure could be used in a criminal prosecution or could lead to other evidence that could be used in that manner. *Id.* Put differently, the privilege depends on the possibility, not the likelihood, of prosecution. *Id.* And the privilege applies to disclosures that are directly incriminating or that provide an

---

[2] As a threshold matter, the Court should quash Defendants' subpoena for being overbroad. Mr. Cook specifically raised this objection in his response to the subpoena. Indeed, Defendants seek all of Mr. Cook's communications with investors over a seven-year time period (January 1, 2016, to the present), despite the complaint being limited to a two-year period (February 19, 2018 to February 19, 2020). *See* Fed. R. Civ. P. 45(d)(3)(iv) (requiring a court to quash a subpoena that subjects a person to undue burden); *see also Rawcar Group, LLC v. Grace Med., Inc.*, No. 13CV1105-H (BLM), 2014 WL 12199977, at *2 (S.D. Cal. June 26, 2014) (citing case for the proposition that "courts have been inclined to limit the scope of discovery directed to non-parties in order to protect the non-party from harassment, inconvenience, or disclosure of confidential documents"). Even if the Court narrows the subpoena, rather than quash it, the narrowed-down version would still implicate Mr. Cook's Fifth Amendment rights, for the reasons detailed below.

indirect link to incriminating evidence. *Id.; see also Simpson v. United States*, 355 U.S. 7, 7 (1957) (summarily reversing a contempt conviction for a witness' refusal on Fifth Amendment grounds to answer such seemingly innocuous queries as "would you please state your residence," "would you give [] a brief resume of your educational background," and "were you ever in the armed forces").

### b. A person can invoke his Fifth Amendment rights against the production of communications.

The Fifth Amendment also covers the production of records. As the U.S. Supreme Court has recognized, producing documents can be testimonial: "By producing documents in compliance with a subpoena, the witness would admit that the papers existed, were in his possession or control, and were authentic." *United States v. Hubbell*, 530 U.S. 27, 36 (2000) (cleaned up). In addition, the producing party may ultimately have to testify about the documents:

> He may be compelled to take the witness stand and answer questions designed to determine whether he has produced everything demanded by the subpoena. The answers to those questions, as well as the act of production itself, may certainly communicate information about the existence, custody, and authenticity of the documents.

*Id.* Such testimony would trigger the Fifth Amendment.

Relevant here, the Fifth Amendment applies to the production of communications (like emails and text messages). In a recent Ninth Circuit district court case, for example, the court denied, on Fifth Amendment grounds, the plaintiff's motion to compel a nonparty to produce his communications with Uber. *Waymo LLC v. Uber Techs., Inc.*, No. 17CV00939WHAJSC, 2017 WL 2864854, at *1 (N.D. Cal. July 5, 2017). Such communications, the court reasoned, implicated the Fifth Amendment because the nonparty was accused of providing Uber with trade secrets. *Id.* at *2. For similar reasons, the court also rejected the plaintiff's request for a privilege log: "the privilege log would identify with whom [the nonparty] communicated and when and thus would lead the government to incriminating

evidence." *Id.* at *3. And as a practical matter, the court noted that the plaintiff could presumably seek the nonparty's communications with Uber (from Uber) without implicating the nonparty's Fifth Amendment privilege. *Id.*

### c. The Fifth Amendment's act-of-production doctrine applies even where the requesting party already obtained some of the sought-after communications from other third parties.

In a more recent case, the court rejected the plaintiffs' attempt to compel a defendant—here, by contrast, Mr. Cook is a nonparty—to produce potentially incriminating emails and texts despite the plaintiffs claiming to already have some of the communications. *Gov't Emps. Ins. Co. v. Kalitenko,* No. 22CV3804ARRRLM, 2023 WL 112803, at *5 (E.D.N.Y. Jan. 5, 2023). The plaintiffs alleged in their civil complaint that the defendant committed fraud. *Id.* at *4. In discovery, the plaintiffs sought the defendant's communications, arguing that they were previously and voluntarily created and thus not compelled testimony. *Id.* at *4. The court held otherwise, reasoning that "it is readily apparent that requiring [the defendant] to compile and produce the requested documents, and thereby implicitly communicate his control over them and their authenticity, could furnish a link in the chain of evidence needed to prosecute him in a criminal action." *Id.* at *5. The court also concluded that the plaintiffs' requests did not fall within the foregone-conclusion exception to the Fifth Amendment. *Id.* That exception, the court explained, applies where the party seeking to compel production establishes with reasonable particularity that it knows (1) that the sought-after documents exist; (2) that the documents are in the answering party's possession or control; and (3) that the documents are authentic. *Id.* That the plaintiffs had obtained "some" of the defendant's emails from third parties was not, the court reasoned, enough to meet this standard. *Id.*

**B. The subpoenaed communications implicate Mr. Cook's right against self-incrimination. And no exception to the Fifth Amendment, including the foregone-conclusion and waiver doctrines, applies.**

Here, Defendants' subpoena to Mr. Cook necessarily implicates the Fifth Amendment. The complaint repeatedly accuses Defendants and Mr. Cook of perpetrating a fraudulent scheme. That is the Trustee's entire case. Hence, Mr. Cook faces at least the possibility of criminal prosecution. And if any relevant communications are in Mr. Cook's possession or control, the very act of producing such communications could potentially incriminate Mr. Cook. By producing responsive communications or a privilege log in compliance with the subpoena, Mr. Cook would admit that the communications exist, are in his possession or control, and are authentic. Moreover, a privilege log would identify with whom Mr. Cook communicated and when. Such information could lead the government to incriminating evidence. In sum, a production or privilege log could (again, to the extent communications exist) directly incriminate Mr. Cook or furnish a link in the chain of evidence needed to prosecute him for a crime.

Although Defendants claim to have already received some of Mr. Cook's texts from third parties, that does not trigger the foregone-conclusion exception to the Fifth Amendment. Defendants have not established any of the elements of the exception, much less with reasonable particularity, as required. They have not shown that the requested texts and emails exist, that the texts and emails are in Mr. Cook's possession or control, or that the texts and emails are authentic. Even assuming Defendants obtained Mr. Cook's communications from third parties, that is not sufficient to meet their burden under the exception. *See Gov't Emps. Ins. Co.*, 2023 WL 112803, at *5. Moreover, if Defendants can, in fact, obtain the communications from third parties, they should do so rather than implicate Mr. Cook's Fifth Amendment rights.

Nor did Mr. Cook waive his right to assert the Fifth Amendment, as Defendants have argued, without elaborating. Any argument by Defendants that Mr.

Cook's productions of materials in a different prior proceeding (the underlying bankruptcy) waived his ability to claim the Fifth Amendment protections over subsequent productions in this proceeding is incorrect. Mr. Cook does not concede that production constituted a waiver. But even assuming it did, a Fifth Amendment waiver is limited to a single proceeding. *United States v. Licavoli*, 604 F.2d 613, 623 (9th Cir. 1979) ("It is settled that a waiver of the Fifth Amendment privilege is limited to the particular proceeding in which the waiver occurs."); *Donell v. Nixon Peabody LLP*, No. CV124084DDPJEMX, 2013 WL 12155701, at *1 (C.D. Cal. Dec. 19, 2013) (rejecting the plaintiff's motion to compel testimony based on the defendant's Fifth Amendment right against self-incrimination: "[the defendant's] Fifth Amendment waiver in his [earlier] criminal case was limited to that proceeding"). In other words, any such waiver in the bankruptcy proceeding would not apply to this adversary proceeding. Accordingly, Mr. Cook retains his Fifth Amendment rights in this proceeding.

### III. Conclusion

For the foregoing reasons, Defendants' subpoena is overbroad and implicates Mr. Cook's Fifth Amendment rights. As such, the Court should reject Defendants' request to compel Mr. Cook to produce documents or a privilege log in response to the subpoena.

DATED: September 1, 2023          Barnes & Thornburg LLP

By: /s/ Alicia Barrs
Alicia Barrs (Pro Hac Vice)
2121 N. Pearl Street, Suite 700
Dallas, TX 75021
Phone/Fax: (214) 258-4200/(214) 258-4199
Email: Alicia.RainesBarrs@btlaw.com

David Frazee (Pro Hac Vice)
555 12th Street N.W., Suite 1200
Washington, DC 20004-1275
Phone/Fax: (202) 289-1313/(202) 289-1330
Email: David.Frazee@btlaw.com

**Attorneys for Nonparty Skyler Aaron Cook**

## CONSENT TO DESIGNATION

I hereby consent to the foregoing designation as a member of the Bar of the United States District Court for the District of Arizona.

DATED: September 1, 2023          **Kahn & Ahart, PLLC**

/s/ Krystal M. Ahart, SBN029358
Krystal M. Ahart
301 East Bethany Home Road, Suite C-195
Phoenix, Arizona 85012
Telephone: 602-266-1717
Facsimile: 602-266-2484
Email: Krystal.Ahart@azbk.biz