John Craiger (Bar No. 021731)
**POLSINELLI PC**
One East Washington St., Suite 1200
Phoenix, Arizona 85004
Telephone: (602) 650-2000
Facsimile: (602) 264-7033
E-Mail: jcraiger@polsinelli.com]

Matthew S. Layfield (Admitted *Pro Hac Vice*)
Michael A. Campbell (Admitted *Pro Hac Vice*)
Nick A. Griebel (Admitted *Pro Hac Vice*)
**POLSINELLI PC**
100 S. Fourth Street, Suite 1000
St. Louis, Missouri 63102
Telephone: (314) 889-8000
Facsimile: (314) 231-1776
Email: mlayfield@polsinelli.com
      mcampbell@polsinelli.com
      ngriebel@polsinelli.com

*Attorneys for the Defendants Valliance Bank, Shelby Bruhn, and Katherine S. Bruhn*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>SKYLER AARON COOK,<br><br>                 Debtor. | Chapter 7 Proceedings<br><br>Case No. 2:20-bk-01730-EFB |
| JAMES E. CROSS, TRUSTEE,<br><br>                 Plaintiff,<br><br>vs.<br><br>VALLIANCE BANK, SHELBY BRUHN, and KATHERINE S. BRUHN,<br><br>                 Defendants. | Adversary No. 2:21-ap-00336-EFB<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS RICO CLAIM AND IN OPPOSITION TO TRUSTEE'S RESPONSE** |

Defendants in this adversary proceeding, Valliance Bank ("**Valliance**"), Shelby Bruhn ("**Mr. Bruhn**"), and Katherine S. Bruhn ("**Mrs. Bruhn**," and collectively with Valliance and Mr. Bruhn, "**Defendants**"), by and through undersigned counsel, hereby file their reply (this "**Reply**") in further support of their Motion to Dismiss Count VII of the Third Amended Complaint for violation of violation of 18 U.S.C. § 1962(d) (the "**RICO Claim**") [Docket

1 No. 160] (the "**Motion to Dismiss**") and supporting Memorandum of Law [Docket No. 161]
2 (the "**Memorandum**" and collectively, the "**Motion to Dismiss**"), and in opposition to the
3 Response [Docket No. 188] (the "**Response**") filed by James E. Cross, as Chapter 7 Trustee
4 (the "**Trustee**") for the estate of the above-captioned Debtor Skyler Aaron Cook (the
5 "**Debtor**"). In further support of the Motion to Dismiss and for this Reply, Defendants
6 respectfully state as follows:

## **REPLY**

### **I. THE TRUSTEE LACKS STANDING TO PURSUE THE RICO CLAIM**

The Trustee continues to argue a fundamental misstatement of bankruptcy law. He cites Ninth Circuit cases to argue that a trustee has standing to assert claims *for injury to the estate*. [Response, pg. 23].[1] This argument either misses the mark, or it is intentionally misdirecting. Defendants do not dispute that a trustee has standing to assert claims *for injury to the estate*, but here, the Trustee is not attempting to assert claims for injuries to the Debtor's estate. Skyler Cook ("**Cook**") is an individual, not a corporation, and the Trustee only has standing to assert claims for injuries directly to Cook, which he has not alleged. Furthermore, the Trustee has alleged that Cook himself was the one who perpetrated a fraud and was the "ringleader" of a criminal enterprise. These allegations on the face of the Complaint are fatal to the Trustee's standing to assert the RICO Claim, and the inquiry ends here.

First, the Trustee does not dispute, or even address, the standing limitation in RICO, which only authorizes a private right of action by "[a]ny person injured in his business or property by reason of a violation of section 1962". 18 U.S.C. § 1964(c). *Holmes v. Securities Inv. Protection Corp.*, 503 U.S. 258 (1992) (confirmed by the Supreme Court). There is no allegation that *Cook* was injured in his business or property by a violation of Section 1962.

The Ninth Circuit case so confidently cited by the Trustee for the proposition that a trustee has standing to assert claims for injury to the estate, *Smith v. Arthur Anderson LLP*, 421 F.3d 989 (9th Cir. 2005), is readily distinguishable. That case involved a debtor

---

[1] References to page numbers in the Trustee's Response refer to the page number indicated in the ECF stamp at the bottom of each page, as opposed to the differing page numbers listed in the footer.

corporation that was allegedly plundered and had its assets squandered at the hands of the defendants, and there was no allegation the corporation itself committed any wrongdoing. In other words, the debtor was the one who was actually injured in that case, not the debtor's creditors. Here, in contrast, the Trustee has not only alleged that Cook was an active participant in wrongdoing, but that he was the "ringleader" of a criminal enterprise that violated Section 1962 of RICO. The court in *Smith* even confirmed "[i]t is well settled that a bankruptcy trustee has no standing generally to sue third parties *on behalf of the estate's creditors*, but may only assert claims held by the bankrupt corporation itself." *Id*. at 1002. (Emphasis added). The Trustee's RICO Claim is not a claim *Cook* possessed prior to his bankruptcy filing. Rather, the Trustee is attempting to do exactly what *Smith* expressly forbids – a trustee's prosecution of claims on behalf of estate creditors against third parties.

Second, in a rather transparent red herring, the Trustee cites three Ninth Circuit cases[2] for his corollary argument that claims for injuries *to a debtor's estate* belong *exclusively* to the trustee, and not the creditors. Again, this argument misses the mark. All those cases involved injuries *to the debtor*. The Trustee is not prosecuting a claim for any *injury to Cook*, but rather is attempting to prosecute claims for *injuries to Cook's creditors*. Under Section 541, the Trustee succeeds only to the rights Cook possessed on the date the bankruptcy case was commenced, and he acquires no greater rights than Cook. The Trustee may only pursue the RICO Claim against Defendants to the extent Cook himself was directly injured and could have done so at the time he filed his bankruptcy petition. *See also* 18 U.S.C. § 1964(c). In other words, the Trustee only has the right to pursue causes of action belonging to Cook, not causes of action belonging to Cook's creditors.

---

[2] *Est. of Spirtos v. One San Bernardino County Super. Ct. Case Numbered SPR 02211*, 443 F.3d 1172 (9th Cir. 2006) (*Debtor*, the innocent spouse of her deceased husband, *was harmed* by sums owed to her under a marital settlement agreement); *CarrAmerica Realty Corp. v. Nvidia Corp.*, 302 Fed. App. 514 (9th Cir. 2008) (unpublished) (*Debtor was harmed* by fraudulent transfers of its assets and trustee 'stands in the shoes of the bankrupt corporation' that could have instituted suit had it not petitioned for bankruptcy); *Kayne v. Ho*, LACV0906816JAKCWX, 2013 WL 12120144 (C.D. Cal. May 9, 2013) (*debtor corporation was harmed* by defendants, including controlling shareholder who transferred assets from debtor, and holding that "(c)reditors of a bankrupt corporation generally do not have standing under RICO", citing *Hamid v. Price Waterhouse*, 51 F3d 1411 (9th Cir. 1995)).

The court in *In re Kohner*, 2:13-BK-02159-DPC, 2014 WL 4639920 (Bankr. D. Ariz. Sept. 11, 2014) summarized the correct application of this law. "In the Ninth Circuit, 'it is well settled that a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the [debtor] itself.'" *Id.* at *4, citing *In re Viola*, 469 B.R. 1, 8 (9th Cir. BAP 2012) (quoting *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1002 (9th Cir. 2005)). Moreover, the courts in *Kohner* and *Viola* rejected the very argument the Trustee makes in his Response – "(i)n this Court's estimation, the mere fact that the Trustee may be pursuing claims of creditors generally, as opposed to pursuing the claims of a specific creditor, does not give the Trustee standing to pursue claims of such creditors." *Kohner*, at *6, (citing *In re Greater Southeast Cmty. Hosp. Corp.*, 333 B.R. 506, 519 (Bankr. D. Colo. 2005)). Moreover, the Ninth Circuit BAP (adopted by the Ninth Circuit in *Williams v. California 1st Bank,* 839 E.2d 664 (9th Cir. 1988)) has concluded that a trustee does "not have standing to pursue an aiding and abetting fraudulent transfer claim because, while § 544(a)(2)'s strong arm powers may go beyond mere avoidance powers, 'they do not establish [the trustee's] right to a claim for relief ... under Ninth Circuit precedent.'" *Kohner* at *4, citing *Viola,* 469 B.R. at 7–8.

Because the Complaint alleges that Cook was the "ringleader" of acts giving rise to the RICO Claim and fails to allege that he was injured, Cook himself would have been unable to prosecute the RICO Claim against Defendants, and therefore, the Trustee lacks standing. *Hunt*, 149 B.R. at 102.

**II. THE TRUSTEE HAS NOT PLED WIRE FRAUD**

*A. Standard for Pleading Wire Fraud Under 18 U.S.C. § 1343*

The Trustee completely sidesteps his obligation to plead wire fraud as the predicate racketeering activity. A "racketeering activity" is defined as an act that is indictable as a criminal offense under specific provisions of Title 18 of the United States Code. *See* 18 U.S.C. § 1961(1); *Miller v. Yokohama Tire Corp*., 358 F.3d 616, 620 (9th Cir. 2004). Pleading a pattern of racketeering activity sufficient to state a RICO violation requires the plaintiff to allege that the defendant participated in ***at least two acts*** *that were chargeable under the*

*enumerated federal statutes*. *Nutrition Distribution LLC v. Custom Nutraceuticals LLC*, 194 F. Supp. 3d 952, 957 (D. Ariz. 2016) (citing 18 U.S.C. § 1961(5)). The plaintiff must adequately plead the elements of each predicate act, satisfying the pleading standard that would apply if the predicate act were a stand-alone claim. *Id*., citing *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (complaint failed to state a RICO claim because it failed to adequately plead the elements of the predicate act; where predicate act is mail or wire fraud, a complaint must plead the elements of this offense with the level of particularity required by Federal Rule of Civil Procedure 9(b)).

The "pattern of racketeering activity" the Trustee has chosen to allege here is wire fraud [Complaint, ¶¶ 182-197]. Wire fraud requires proof of: (1) a scheme to defraud, (2) a use of wires in furtherance of the scheme, and (3) a specific intent to deceive or defraud. *U.S. v. Shih*, 2023 WL 4568337, at *12 (9th Cir. July 18, 2023); 18 U.S.C. § 1343. A plaintiff must also allege misrepresentations, and that they were material. *Id*.

The Trustee has failed to plead any misrepresentations with particularity. In his Response, the Trustee points to two alleged misrepresentations he believes suffice to plead wire fraud with particularity: "(1) the BRHS Partnership Agreements that Cook entered with investors misrepresented that capital from those investors was to be used for working capital for BRHS, and (2) Cook provided a personal financial statement to investors that misrepresented his assets by millions of dollars." [Response, pg. 11]. These simply fail.

First, the Trustee has failed to plead that Cook even used funds in contravention of the Partnership Agreements, i.e. that Cook did not use the funds received for "working capital." Even if the Trustee had pled that, Cook's breach of Partnership Agreements does not transform the claim into one for fraud. *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 674–75 (Tex. Ct. App. 1996) (concluding that fraud and negligent misrepresentation causes of action were based upon the breach of a promise and therefore contractual in nature, citing *Crim Truck & Tractor v. Navistar Int'l,* 823 S.W.2d 591, 597 (Tex. 1992) (law imposes duty to refrain from fraudulently inducing a person to enter a contract, but the failure to perform the terms of a contract is a breach of contract); *Airborne Freight,* 847 S.W.2d at 294, 298

(negligent misrepresentation consists of misrepresentation of existing fact rather than promise of future conduct)); *Perlman v. Zell*, 185 F.3d 850, 853 (7th Cir. 1999) ("Breach of contract is not fraud, and a series of broken promises therefore is not a pattern of fraud. It is correspondingly difficult to recast a dispute about broken promises into a claim of racketeering under RICO."); *Sanchez v. Triple-S Mgmt., Corp.*, 492 F.3d 1, 12 (1st Cir. 2007) ("Breach of contract itself [does not] constitute a scheme to defraud.").

Second, the Trustee has completely failed to allege which investors (or even how many investors) to whom Cook sent the alleged false personal financial statement, and whether Defendants were even aware of any false financial statement. This is the Trustee's key allegation of fraud, and yet he fails to provide any facts, let alone the requisite detail under Rule 9(b), relating to who received the financial statement, or whether it was even sent by email or some other wire. Simply put, the Trustee has not alleged a single instance in which the Debtor emailed a false personal financial statement or a misrepresentation, let alone a "pattern" of doing so. *Comm. to Protect our Agric. Water v. Occidental Oil and Gas Corp.*, 235 F. Supp. 3d 1132, 1179 (E.D. Cal. 2017) (holding that plaintiffs failed to plead a pattern of racketeering activity based on predicate acts of wire fraud, where complaint did not allege with particularity how any of defendants' communications involved misrepresentations or were an essential part of a scheme to defraud, and failed to describe the role of each defendant in that scheme or who was party to the fraudulent statements). As discussed in greater detail below, this failure to plead a "pattern" of any wire fraud is fatal to the Trustee's RICO Claim.

Finally, as the Court is aware, the Trustee failed to collect and preserve Cook's emails and text messages with his investors. This hinders the Defendants from even learning in discovery whether Cook communicated misrepresentations and to whom.

### B. *The Proofs of Claims Do Not Establish Wire Fraud*

The Trustee now attempts to provide missing facts in the Complaint by arguing that it "expressly incorporates" the creditors' proofs of claims in the bankruptcy case. First, paragraph 40 of the Complaint completely fails to "expressly incorporate" any proofs of

claim.[3] Second, the Trustee fails to cite any case law for the argument that a court can consider proofs of claims at the motion to dismiss stage to enable a plaintiff to survive the heightened pleading requirements of Rule 9(b) by referring to unknown "allegations" contained in the proofs of claims.

However, even if the Trustee had expressly "incorporated by reference" the proofs of claims, the Defendants cannot possibly be expected to answer the RICO Claim by reviewing a hodge-podge of incomplete, miscellaneous documents to synthesize unpled allegations. This is the Trustee's job, which he failed to do. More importantly, the proofs of claim ***don't even allege any wire fraud*** – rather, they only assert claims for breach of contract. Nearly all of them describe "money loaned" as the basis for the claims, and most don't even identify whether loans were made by check or wire, whether Partnership Agreements were procured with fraudulent misrepresentations or false financial statements, or whether loans for "working capital" were used for something other than "working capital." Similarly, most of the proofs of claim don't even include copies of checks, wires, or emails to establish any wire fraud. Most importantly, there is no allegation that Valliance or Mr. Bruhn even saw the Partnership Agreements, false financial statements, loans of all investors, the misuse of those loans (i.e. – for something other than "working capital"), or even the identity of the investors (particularly where many of the loans were deposited at Wells Fargo). [*See* Trustee's Report]. Finally, the actual claim amounts filed by many of the creditors don't even match the amounts alleged by the Trustee in paragraph 40. This discrepancy alone begs the question of which amounts the Defendants are expected to address in answering the RICO Claim.

The examples cited in the Response of the first two creditors in paragraph 40 highlight the complete failure here. The proof of claim of Brad Johnson (claim number 31) is for "***money loaned***" and the attached Explanation of Claim merely provides the date of the loan (August 22, 2018), that the "Debtor and Claimant entered into a written contract…," and the

---

[3] The Trustee also did not allege in any prior motion to dismiss briefings that he "incorporated" the proofs of claims by reference or expected the Defendants to formulate unknown allegations from these proofs of claims.

Debtor made payments totaling $126,000. (2:20-bk-01730-EPB, Claim No. 31, at 2 and 4). There is no allegation of wire fraud, or even that a check or wire was involved. Similarly, the proof of claim of Matthew Delgadillo (claim number 6) is for "***real estate investment***" and is supported by two Partnership Agreements, both of which state that "(t)he funds will be applied in two strategies, the first being working capital and second being liquidity for project financing." (2:20-bk-01730-EPB, Claim No. 6-1, Part 5, Part 7). There is no statement that funds were used contrary to the Partnership Agreements. Moreover, the two checks attached to the claim are payable to "Colton Stormans," with no explanation of this payee or how he has anything to do with Cook. Most importantly, ***neither of these proofs of claim mention any wire fraud***, or even a misrepresentation. Moreover, both proofs of claim reference Partnership Agreements dated August of 2018 – prior to the bounced checks and emails of Valliance employees the Trustee only alleges to have occurred between ***January and August of 2019***. (Complaint, ¶¶ 41-84). (Indeed, eight of the creditors listed in paragraph 40 involved "amounts invested" in 2018, not 2019). Even if the proofs of claim were "incorporated" in the Complaint, it is simply impossible for the Defendants to answer these, given that they don't even allege any wire fraud. Despite four (4) Complaints, the Trustee's RICO Claim does not allege wire fraud with any particularity required by Rule 9(b).

### C. *A Claim for Fraud by Omission is Still Subject to Rule 9(b)*

Next, the Trustee asks this court to excuse the requirements of Rule 9(b) because his theory of fraud is also supposedly based on allegations of fraudulent omissions. [Response, pg. 11-12]. However, claims for fraud by omission are still subject to Rule 9(b)'s particularity requirements. *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 467 F. Supp. 3d 849, 861 (N.D. Cal. 2020) ("Contrary to Plaintiffs' position, and as this Court has previously held, Rule 9(b)'s heightened pleading standard applies to claims based on fraudulent omissions. While courts in this district have recognized that plaintiffs cannot identify the contents and circumstances of an omission as specifically they would an affirmative misrepresentation, that does not excuse their obligation to plead with particularity the circumstances surrounding any partial representations giving rise to a duty to disclose …

Because Plaintiffs' partial representations theory previously failed for the same reason, this fraud theory is dismissed with prejudice.") (internal citations omitted); *United Food & Com. Workers Cent. Pennsylvania & Reg'l Health & Welfare Fund v. Amgen, Inc.*, 400 F. App'x 255, 257 (9th Cir. 2010) (Rule 9(b) was not satisfied were complaint failed to "identify material omissions in derogation of an independent statutory or fiduciary duty to disclose."); *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co. Ltd.*, 520 F. Supp. 3d 1258, 1268 (C.D. Cal. 2021) ("[a]lthough Rule 9(b)'s requirement of particularity in pleadings applies to claims of fraudulent omission, that standard is modified somewhat in omission cases. In such cases, the plaintiff must sufficiently identify the particular information that should have been disclosed, the reason the information should have been disclosed, the person who should have disclosed it, and the approximate time or circumstances in which the information should have been disclosed.") (internal citations and quotations omitted).

Furthermore, nondisclosure or failure to disclose under 18 U.S.C. § 1343 can "form the basis of a scheme to defraud only when there exists an independent duty (either fiduciary or derived from an explicit and independent statutory requirement) and such a duty has been breached." *In re ZF-TRW Airbag Control Units Products Liab. Litig.*, 601 F. Supp. 3d 625, 743 (C.D. Cal. 2022), citing *Eller v. EquiTrust Life Ins. Co.*, 778 F.3d 1089, 1092 (9th Cir. 2015) ("Absent an independent duty, such as a fiduciary duty or an explicit statutory duty, failure to disclose cannot be the basis of a [RICO] fraudulent scheme."); *In re All Terrain Vehicle Litig.*, 978 F.2d 1265, 1992 WL 332105, at *3 (9th Cir. 1992) ("A fraudulent concealment claim must rest upon an independent fiduciary or statutory duty to disclose owed to the party seeking relief.").

The Trustee fails to allege any duty owed by Valliance or Mr. Bruhn to Cook's creditors. Accordingly, the only alleged fraudulent omissions this Court can consider are: (i) Cook's failure to disclose insolvency; and (ii) Cook's failure to disclose that he was allegedly engaged in a Ponzi scheme. [Response, pg. 12]. However, there is no claim for fraudulent omission based on a debtor's failure to disclose insolvency. *In re N. Am. Coin & Currency,*

*Ltd.*, 767 F.2d 1573, 1576 (9th Cir. 1985) (holding that a debtor's failure to disclose insolvency does not constitute fraud by omission). Similarly, the failure to disclose the commission of a crime, or that Cook allegedly defrauded his investors, does not suffice as the type of existing material fact that must be disclosed. The Trustee's circular logic would enable the exception to swallow the rule. The Trustee is essentially arguing that after Cook allegedly defrauded his investors, he was then under a prospective duty to disclose to his investors that he had defrauded them. This is not a misrepresentation or omission of an existing material fact that forms the basis for a claim of *fraud by omission*.

The Trustee also relies on *Chang v. Wells Fargo Bank, N.A.*, 2020 WL 1694360 (N.D. Cal. Apr. 7, 2020) as support for his argument that he is not required to plead the "who, what, when, why, where, and how" of the alleged fraud. [Response, pg. 13]. However, in *Chang*, the plaintiffs directly alleged that defendants had actual knowledge of a fraud being committed because they learned that a fraudster was misusing investor money for Ponzi scheme payouts. *Id*. at *3-4. The court noted that the allegations included: (1) Wells Fargo processed all transactions of the fraudster and manually processed a massive number of wires that on their face indicated that they deposited investor proceeds; (2) Wells Fargo was the only financial institution the fraudster used; (3) Wells Fargo processed payments from investors, as well as payments to investors; (4) Wells Fargo's account records showed that investor payouts exceeded incoming funds. *Id*. at *5. Here, each of these allegations are missing from the Complaint. In addition, the court in *Chang* merely held that plaintiffs were not required at the pleading stage to plead who (at the bank) reviewed the accounts, when they were reviewed, what was learned about the fraudster's business, and how anyone at Wells Fargo discovered anything. *Id*. Additionally, *Chang* involving an aiding and abetting fraud claim, where the court noted that actual knowledge of the underlying fraud can be averred generally. Here, in contrast, the Trustee is required to plead the underlying predicate pattern of racketeering activity (i.e., wire fraud) with particularity under RICO and Rule 9(b).

## III. THE TRUSTEE HAS NOT PLED A "PATTERN" OF RACKETEERING ACTIVITY

Even if the Trustee had alleged two acts of wire fraud, which he has not, the Trustee has not alleged a "continuous" pattern of racketeering, as required by *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229 (1989). The Trustee's continuity argument is based on two fallacies: (1) that the "Cook Enterprise" is on-going, and (2) that the Trustee alleged a pattern lasting 1.5 years.

"Continuity" is both an open-ended and closed-ended concept. *Id.* at 241. Open-ended continuity "may be established by showing that the predicate acts or offenses are part of an ***ongoing*** entity's regular way of doing business." *Id.* at 242; *see also Allwaste*, 65 F.3d at 1529. The Trustee has admitted, however, that Cook "ceased operations" in the Fall of 2019. [*Complaint* at ¶ 116]. Contrary to footnote 5 in the Response, there's no ambiguity in paragraph 116.[4] Given the Trustee's admission, the Trustee cannot possibly establish open-ended continuity.

Although "the threat of continuity must be viewed at the time the racketeering activity occurred" (*Heinrich v. Waiting Angels Adoption Serv., Inc.*, 668 F.3d 393, 410 (6th Cir. 2012)), the question is not whether an ongoing threat existed "***at the time of each predicate act***." [Response, pg. 17]. If the Trustee's interpretation of open-ended continuity was correct, open-ended continuity would always exist because a defendant necessarily intends to commit a predicate act "at the time" each act is committed. The Trustee's argument is based on nothing more than the logical fallacy of circular reasoning that would render meaningless *H.J. Inc*'s open-ended continuity standard. The question is whether "past conduct that ***by its nature*** projects into the future with a threat of repetition." *Religious Tech. Ctr. v.*

---

[4]Furthermore, if the Court decides it may consider the proofs of claims as the Trustee wishes, then the Court must consider the letter Cook himself sent to various investors that supported Brian Shahan's proof of claim. This letter advises investors that BRHS "has been forced to suspend operations and is no longer in business." [2:20-bk-01730-EPB, Claim No. 14-1, Part 2, p. 36]. Brian Shahan alleges he received this letter "less than two months" after he gave Cook $200,000 under his Partnership Agreement dated August 27, 2019 (i.e. – around October 2019). *Id.* at 6. Cook also filed his bankruptcy on February 19, 2020, which only further confirms there was no ongoing threat in October 2019. [Complaint, ¶¶ 2-5]. Accordingly, Cook's business operations were not ongoing, and any alleged ongoing threat ended in October 2019.

*Wollersheim*, 971 F.2d 364, 366 (9th Cir. 1992) (emphasis added). In *Wollersheim*, the threat ended when the underlying lawsuit ceased, so "by its nature" the threat was not on-going. *Id.*[5] Because the Trustee alleges that Cook's business operations ceased in the Fall of 2019, the Cook Enterprise's corrupt business practices cannot "by nature" project indefinitely into the future. To the contrary, the acts of racketeering **naturally stopped** long before the Trustee's complaint was ever filed.[6] Under the Trustee's absurd interpretation of open-ended continuity, proof of an ongoing threat would be established by a defendant's mere continued existence. Once again, the Trustee's interpretation would render *H.J. Inc.'s* open-ended continuity standard meaningless. When it passed RICO, Congress was not concerned with "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct." *H.J. Inc.*, 492 U.S. at 242. The Trustee's own allegations establish that Cook's operations ceased in the Fall of 2019 and posed no threat of future criminal conduct.

Because the Trustee admits that Cook's business operations ceased in the Fall of 2019, the Trustee cannot establish open-ended continuity, i.e., an ongoing threat, the Trustee must rely on a closed-ended continuity. In the absence of an ongoing threat, no court has held that a pattern lasting 1 year and 1 week is sufficient for closed-ended continuity. *See, e.g., Howard*, 208 F.3d at 750 (a pattern lasting only a few months was insufficient where evidence indicated that the defendant's ability to process volume was improving and did not constitute an ongoing issue); *Allwaste*, 65 F.3d at 1527-28 (pattern lasting 13 months was sufficient where the defendants' regular way of doing business was to demand kickbacks, and the

---

[5] *See also Steam Press Holdings, Inc. v. Hawaii Teamsters, Allied Wkrs Union, Local 996*, 302 F.3d 998, 1011 (9th Cir. 2002) (the threat posed by the defendant's conduct ended when the strike ceased and the union was decertified); *Special Purpose Accounts Receivable Co-op Corp. v. Prime One Capital Co., L.L.C.*, 202 F. Supp.2d 1339, 1347 (S.D. Fla. 2002) (holding that a pattern was close-ended by definition because it terminated when one of the defendants voluntarily withdrew from the enterprise).

[6] The Trustee's general allegation that fraud was Cook's "regular way of doing business" also does not establish open-ended continuity. The same argument was rejected in *Howard v. America Online Inc.*, 208 F.3d 741, 750 (9th Cir. 2000) (holding that the plaintiff must present facts indicating that the fraud would continue into the future). The Trustee has presented no factual allegations indicating that Cook had any capacity to continue the alleged scheme after he ceased business operations.

demands would have continued if the defendant's employment had not been terminated by the victim); *United States v. Busacca*, 936 F.2d 232, 237-238 (6th Cir. 1991) (pattern lasting 2.5 months was sufficient where the defendant indicated no intention to stop embezzling until he was found guilty and removed from the board).

Closed-ended continuity can be established by acts of racketeering that occur over a "substantial period of time" (*id.* at 241), but contrary to the fiction stated in the Trustee's response, the Trustee did not allege a pattern lasting 1.5 years. [Response, pgs. 16-17]. As noted, paragraph 40 of the Trustee's complaint only shows a pattern of money transfers lasting 1 year and 1 week. Where are the other six (6) months of racketeering activity? The "pattern" argument is premised on six (6) months of racketeering activity that were never alleged, let alone alleged with particularity. "To show a pattern under RICO, a plaintiff must prove that there are a sufficient number of predicate acts 'indictable' as … wire fraud." *Howard*, 208 F.3d at 748 (quoting 18 U.S.C. § 1961(1)(B)). "Citing acts as a part of a RICO pattern, without proving they are indictable, is not sufficient." *Id.; see also Schreiber Distributing Co. v. Serv–Well Furniture Co., Inc.,* 806 F.2d 1393, 1400–01 (9th Cir. 1986) (stating that a RICO plaintiff who alleges a pattern of racketeering activity based upon fraud must plead the alleged fraudulent acts with sufficient specificity to satisfy Fed.R.Civ.P. 9(b)). The Trustee cannot rely on six months of racketeering activity that he literally pulls from thin air.

Here, Cook not only stopped his operations by the Fall of 2019, but he stated to investors in writing that he was stopping. [*Supra*, Note 4]. In paragraph 116, the Trustee affirmatively admits that Cook's operations ceased in the Fall of 2019. Since there was no ongoing threat, the Trustee must establish closed-ended continuity. In the absence of an ongoing threat, however, there is simply no support for the Trustee's contention that a pattern lasing a year and one week is sufficient for purposes of closed-ended continuity. The Trustee cannot rewrite his Complaint in the Response. The Trustee has failed to adequately plead a "pattern" of wire fraud.

91042926.7

## IV. THE DOCTRINE OF *IN PARI DELICTO* BARS THE TRUSTEE'S RICO CLAIM

The Trustee's arguments concerning *in pari delicto* again apply a fundamental misstatement of bankruptcy law. The Trustee argues that *Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145 (11th Cir. 2006) does not apply because he is "not asserting a RICO Claim based on section 541." [Response, pg. 25]. However, Section 541 is a limitation on a trustee's right to prosecute claims, regardless of the claim being asserted. It does not confer standing, rather, it simply defines the contours of what constitutes property of an estate.[7] The holding of *Edwards* is directly on point, as the Trustee even notes: "because 11 U.S.C. § 541 defined the estate as having the same legal interests as the debtor, and the debtor would have been subject to *in pari delicto*, the trustee was also subject to *in pari delicto*." [Response, pg. 25].

The Trustee relies on the highly distinguishable *FDIC v. O'Melveny & Myers*, 61 F.3d 17 (9th Cir. 1995), which does not involve RICO. [Response, p. 25]. However, this reliance fails to appreciate the crucial distinction that *O'Melveny* involved a *receiver*, not a bankruptcy *trustee*. The cases after *O'Melveny* ubiquitously hold that *in pari delicto* is a defense to actions asserted by bankruptcy trustees because of the limitations of Section 541 of the Bankruptcy Code. For example, in *In re Donahue Securities, Inc.*, 304 B.R. 797, 799 n. 4 (Bankr. S.D. Ohio 2003), a bankruptcy trustee also attempted to rely on *O'Melveny*, arguing that a debtor's misconduct could not be imputed to an innocent successor in interest such as a bankruptcy trustee, and that a trustee's role was analogous to that of the receiver in *O'Melveny*. However, the court noted that *O'Melveny* was "easily distinguishable" from a bankruptcy proceeding because of 11 U.S.C. § 541. *Id.* The court explained:

> A bankruptcy trustee succeeds to "all legal or equitable interests of the debtor in property *as of the commencement of the case*[.]" *See* § 541(a)(1) (emphasis

---

[7] "Though this paragraph [§ 541(a)(1)] will include choses in action and claims by the debtor against others, it is not intended to expand the debtor's rights against others more than they exist at the commencement of the case. For example, if the debtor has a claim that is barred at the time of the commencement of the case by the statute of limitations, then the trustee would not be able to pursue that claim, because he too would be barred." H.R. Rep. 95–595, at 367–68, reprinted in 1978 U.S.C.C.A.N. 5963, 6323.

> added). Because a trustee's rights are limited to those enjoyed by the debtor "as of the commencement of the case," courts have been unpersuaded by the argument that postpetition appointment of a trustee somehow renders the doctrine of *in pari delicto* inapplicable. *See Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340, 355-58 (3rd Cir. 2001) (distinguishing *Scholes* and *O'Melveny* from bankruptcy proceedings; *Sender v. Buchanan (In re Hedged–Investments Assocs., Inc.),* 84 F.3d 1281, 1284–85 (10th Cir. 1996).

*Id*. at 799. The court rejected the very argument the Trustee is asserting here – that the debtor's misconduct could not be imputed to an innocent successor trustee in bankruptcy. *Id*. See also *In re Crown Vantage, Inc.*, 2003 WL 25257821, at *6–7 (N.D. Cal. Sept. 25, 2003), *aff'd sub nom. Crown Paper Liquidating Tr. v. Pricewaterhousecoopers LLP*, 198 Fed. Appx. 597 (9th Cir. 2006) (distinguishing *O'Melveny* as inapplicable to bankruptcy trustees based on the limitations of Section 541, allowing defendants to assert doctrine of *in pari delicto,* and noting that even before the enactment of Section 541, the Ninth Circuit observed that it is elemental that a trustee stands in the shoes of the bankrupt debtor and can assert no greater rights against defendants than could have been asserted by the debtor in the absence of bankruptcy proceedings); *In re Yellow Cab Coop., Inc.*, 602 B.R. 357, 361 (Bankr. N.D. Cal. 2019) (rejecting the exact argument Trustee is asserting based on *O'Melveny*).

In an even more confusing argument, the Trustee next alleges that his "RICO claims exist under 11 U.S.C. § 544, which permits the Trustee to 'stand in the shoes of' Debtor's creditors." [Response, pg. 25]. However, in *In re Hunt*, 149 B.R. 96 (Bankr. N.D. Tex. 1992), the court explained that under Section 544, a trustee steps into the shoes of a *hypothetical* contract claimant or a judgment creditor with an unsatisfied execution. *Id*. at 103. Accordingly, the court dismissed the RICO claims and held that *actual* creditors could maintain RICO claims such as those at issue to the extent they suffered damages, however, such claims would belong to those creditors individually and not to the bankruptcy estate. *Id*. "[T]he trustee lacks standing to bring personal claims of creditors. The simple reason is that personal claims are not property of the estate." *Id*.

The Trustee unwittingly cites *Goernitz v. Kohner (In re Kohner)*, 2014 WL 4639920 (Bankr. Ariz. 2014), in which the court held that the legislative history behind Section 544 of

91042926.7

the Bankruptcy Code, as well as Ninth Circuit and BAP precedent, led the court to find the Trustee did not have standing to pursue claims by "standing in the shoes of the Debtor's creditors." *Id.* at *3-6.

As this Court knows, the basic premise of Section 544(a) is to provide standing and a procedural vehicle by which a trustee can avoid an unperfected security interest under the rights and powers of a hypothetical judicial lien creditor. See *In re Paramount Int'l.,* 154 B.R. 712 (Bankr. N.D. Ill. 1993); *In re May,* 19 B.R. 655, 658 (D. Fla. 1982). Thus, these rights and powers are determined by applicable non-bankruptcy law, not Section 544. *In re Michigan Lithographing Co.,* 997 F.2d 1158 (6th Cir. 1993). Accordingly, a trustee can "avoid" a security interest, which actually results in the subordination of such security interest as opposed to the "avoidance" of the debt as a whole, if applicable non-bankruptcy law provides such rights and powers to a judicial lien creditor. *See, e.g.,* UCC §9-317(a)(2); *see, also, In re Munsey Corp.,* 10 B.R. 864, 866 (Bankr. E.D. Pa. 1981). When a security interest is avoided under Section 544(a), the creditor is treated for bankruptcy purposes as an unsecured creditor. If, however, a judicial lien creditor has no such rights and powers under applicable non-bankruptcy law, then the trustee has no such rights and powers. Consequently, a trustee only has the rights and powers that applicable non-bankruptcy law provides, and not a blanket ability to avoid unperfected security interests. However, as courts ubiquitously hold, a trustee's rights and powers under Section 544(a) are not the rights and powers of specific creditors. Instead, Section 544(a) limits such rights and powers to those of a *hypothetical* judicial lien creditor or an unsatisfied execution creditor.

Section 544(a) provides that a trustee stands in the shoes of a creditor, *whether or not such a creditor exists.* However, a trustee does not stand in the shoes of individual creditors and does not have standing to pursue causes of action on behalf of individual creditors. *See Caplin v. Marine Midland Grace Trust Co. of New York,* 406 U.S. 416, 492-31 (1972). Congress initially drafted certain provisions in Section 544 to overrule *Caplin* and allow a trustee to avoid a security interest based on the rights of any creditor. *See Comm. on Bankruptcy Laws,* H.R. Doc. No. 93-137, Part II, 93d Cong., 1st Sess. 160 (1973). However,

this provision did not survive the Bankruptcy Code's enactment. *See* H. Rep. 95-595, 95th Cong., 2d Sess. 370 (1977). Therefore, Congress intended *Caplin*'s holding to remain intact. *See In re Ozark Restaurant Equipment Co. Inc.,* 816 F.2d 1222 (8th Cir. 1987).[8]

Here, the Trustee is not purporting to avoid any transfers or unperfected security interests that could have been avoided by an unsecured creditor under nonbankruptcy law. Nor is the Trustee purporting to even stand in the shoes of the types of creditors delineated by Section 544(a), i.e. a hypothetical judicial lien holder, an unsatisfied execution creditor, or a bona fide purchaser. Furthermore, to the extent any such creditors actually exist, i.e. the allegedly defrauded "investors," then such claims belong to those creditors and the Trustee lacks standing to assert them. *Finova Capital Corp. v. Lawrence*, 2000 WL 1808276, at *2 (N.D. Tex. 2000) ("[A] trustee does not have standing to pursue actions on behalf of individual creditors."); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 2007 WL 789141, at *7 (S.D. Tex. 2007) ("[t]he bankruptcy trustee may only assert claims on behalf of the debtor corporation and generally cannot sue third parties on behalf of the estate's creditors," and "if the debtor has joined a third party in defrauding creditors, the trustee does not have standing to sue the third party for damages to creditors."). Simply put, Section 544(a) does not confer standing on the Trustee to assert his RICO Claim. To the extent he is purporting to prosecute claims on behalf of investors, the Trustee lacks standing to do so.

Finally, the Trustee makes passing arguments that Defendants raised these arguments in their previous motion to dismiss and this Court already rejected them. However, the prior motion to dismiss did not involve a RICO claim for which the doctrine of *in pari delicto* bars a claim of a conspirator, and thus bars the same claim of a trustee. See *Edwards* at 1152-56.

---

[8] Other appellate courts have followed *Caplin*'s holding, and *Ozark Restaurant*'s adoption thereof, that a trustee has no standing to pursue third parties on behalf of specific, individual creditors. *See, e.g., Williams v. California First Bank,* 859 F.2d 664 (9th Cir. 1988); *E.F. Hutton & Co. Inc. v. Hadley,* 901 F.2d 979 (11th Cir. 1990). Thus, if a secured creditor has rights and powers under applicable non-bankruptcy law that would allow it to avoid or subordinate another creditor's security interest, that remedy is unavailable to a bankruptcy trustee.

## V.   THE TRUSTEE FAILS TO STATE A CLAIM AGAINST KATHERINE BRUHN

The Trustee's lackluster Response with respect to his RICO Claim against Katherine Bruhn barely warrants a response. The Trustee's RICO Claim against Ms. Bruhn is for violation of 18 U.S.C. § 1962(d). "A RICO conspiracy claim requires proof of 'an agreement involving either a violation of a substantive provision of RICO or a violation of two predicate offenses' and 'a showing that the defendant was aware of the essential nature and scope of the enterprise and intended to participate in it.'" *In re Arizona Theranos, Inc., Litig.*, 256 F. Supp. 3d 1009, 1037 (D. Ariz. 2017). Accordingly, the two essential elements of a RICO conspiracy claim under Section 1962(d) are: (1) an agreement that a substantive provision of RICO would be violated; and (2) awareness of the nature and scope of the RICO enterprise and intent to participate in it. These allegations are entirely absent with respect to Ms. Bruhn. The Complaint contains only one allegation: "Bruhn and Katherine S. Bruhn are husband and wife." [Complaint, ¶ 10]. The Trustee has not alleged that she conspired to violate Section 1962(c), agreed to commit any predicate acts, or even intended that any predicate acts be committed. He has not even alleged that she formed part of the RICO Enterprise. Simply put, there is no allegation of any wrongdoing by Ms. Bruhn. The Trustee's "community property" argument does not remedy the failure to allege a RICO Claim against Ms. Bruhn. Accordingly, the RICO Claim must be dismissed with respect to Katherine Bruhn.

WHEREFORE, Defendants respectfully request that the Court dismiss the Trustee's RICO Claim, with prejudice, under Rule 12(b)(6), and for such other Orders as the Court deems appropriate.

RESPECTFULLY SUBMITTED this 11th day of September, 2023.

POLSINELLI PC

By: */s/ Michael A. Campbell*
  Michael A. Campbell
  Matthew S. Layfield
  Nick A. Griebel
  *Attorneys for Defendants Valliance Bank,*
  *Shelby Bruhn, and Katherine S. Bruhn*

1. I hereby certify that on September 11, 2023, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants, which constitutes service, pursuant to L.R. Bankr. P. 9076-1.

*/s/ Rebecca O'Brien*