John Craiger (Bar No. 021731)
**POLSINELLI PC**
One East Washington St., Suite 1200
Phoenix, Arizona 85004
Telephone: (602) 650-2000
Facsimile: (602) 264-7033
E-Mail: jcraiger@polsinelli.com

Matthew S. Layfield (Admitted *Pro Hac Vice*)
Michael A. Campbell (Admitted *Pro Hac Vice*)
Nick A. Griebel (Admitted *Pro Hac Vice*)
**POLSINELLI PC**
100 S. Fourth Street, Suite 1000
St. Louis, Missouri 63102
Telephone: (314) 889-8000
Facsimile: (314) 231-1776
Email: mlayfield@polsinelli.com
   mcampbell@polsinelli.com
   ngriebel@polsinelli.com

*Attorneys for the Defendants Valliance Bank, Shelby Bruhn, and Katherine S. Bruhn*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br>SKYLER AARON COOK,<br>                 Debtor. | Chapter 7 Proceedings<br>Case No. 2:20-bk-01730-EFB |
| JAMES E. CROSS, TRUSTEE,<br>                 Plaintiff,<br>vs.<br>VALLIANCE BANK, SHELBY BRUHN, and KATHERINE S. BRUHN,<br>                 Defendants. | Adversary No. 2:21-ap-00336-EFB<br><br>**DEFENDANTS' BRIEF IN OPPOSITION TO DEBTOR'S FIFTH AMENDMENT SUBMISSION** |

Defendants in this adversary proceeding, Valliance Bank, Shelby Bruhn, and Katherine S. Bruhn (collectively, "**Defendants**"), by and through undersigned counsel, hereby submit this brief (this "**Brief**") in opposition to the Court Ordered Fifth Amendment Submission [Docket No. 189] (the "**Debtor's Brief**") filed by the Debtor Skyler Aaron Cook (the "**Debtor**"). The Debtor's Brief requests an opportunity to file reply briefing. If so

granted, Defendants likewise respectfully request an opportunity to file sur-reply briefing.

## RELEVANT BACKGROUND

On February 19, 2020, Debtor filed his Voluntary Petition under Chapter 11, Subchapter V of the Bankruptcy Code, and James E. Cross (the "**Trustee**") was appointed Subchapter V Trustee the following day.

On April 24, 2023, Defendants served their Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case (the "**Subpoena**") upon the Debtor's counsel. [A true copy of this Subpoena is attached hereto as **Exhibit A**]. Among other documents, the Subpoena sought the Debtor's emails and text messages with investors, partners, lenders, and creditors. (*See* **Exhibit A**, document request numbers 1 through 9).

On May 8, 2023, the Debtor served Defendants with his Objections and Responses to Subpoena (the "**Written Objections**") in which he provided the following response to requests to produce his communications with his investors, partners, lenders, and creditors: "Cook has already produced all relevant documents within his possession, custody, and control." [A true copy of the Written Objections is attached hereto as **Exhibit B**]. The Debtor raised no Fifth Amendment objections in response to any requests in the Subpoena, which sought the Debtor's communications with various third parties. (*See* **Exhibit B**). The Debtor produced only four (4) documents, which consisted of three state court complaints against the Debtor and a demand for arbitration. The Debtor's counsel (Rebecca Eaton of the law firm Kearney, McWilliams & Davis, PLLC) advised undersigned counsel via email that the United States Trustee requested and obtained documents from the Debtor as part of his Rule 2004 Examination.[1] [A true copy of the email from Debtor's counsel, dated May 17, 2023, is attached hereto as **Exhibit C**]. Debtor's counsel also represented that "Skyler doesn't have a problem sharing these documents with you" but any production had to be subject to entry of

---

[1] *See* Order Granting U.S. Trustee's Application for Production of Documents and Oral Examination of Skyler Aaron Cook Pursuant to F.R.B.P. 2004 (Doc #68) (the "**Rule 2004 Order**") entered on May 15, 2020 in the Debtor's Bankruptcy Case No. 2:20-bk-01730-EPB. [A copy of the May 20, 2020 Order is attached hereto as **Exhibit D**].

an amendment to the protective order. Accordingly, undersigned counsel worked with Debtor's counsel to obtain entry of the Stipulated Amendment to Protective Order on June 12, 2023 [Docket No. 115] (the "**Amendment to Protective Order**"). On June 13, 2023, Debtor's counsel produced a zip file to Defendants that contained certain documents. However, upon review of the documents, it was apparent the Debtor produced *some* but not *all* of his emails with investors, and he did not produce *any* text messages with his investors.

Following multiple emails and meet and confer efforts, the Debtor's counsel also advised Defendant's counsel that:

- The only request to the Debtor for documents was the May 20, 2020 Order made by the United States Trustee, not the Trustee. (*See* **Exhibit D**).
- The Trustee did not make copies or take any forensic images of the Debtor's devices, including computers, cell phones, iPads, hard drives, and thumb drives.
- The Trustee did not ask the Debtor for access to his email accounts.
- The Debtor does not have any text messages, and he no longer has the phone that was used during the relevant period.
- The Debtor's counsel was "not aware of the trustee ever requesting Skyler to turn over his phone—Skyler has not been asked to produce anything related to the bankruptcy in over three years."

Debtor's counsel also advised Defendants' counsel that the Debtor's old phone number was (214) 789-1746 (AT&T), and his current number is (480) 235-6455 (also AT&T).

Accordingly, Defendants served a Subpoena to Produce Documents on AT&T Mobility, LLC ("**AT&T**") on June 27, 2023 (the "**AT&T Subpoena**") [Docket No. 121]. The Debtor opposed AT&T's production of the Debtor's text messages with his investors and filed a Motion to Quash Defendants' Subpoena to AT&T [Docket No. 132] (the "**Motion to Quash**"), which also did *not* raise any Fifth Amendment objections. The Motion to Quash was heard on August 17, 2023, at which time Debtor's counsel orally raised an objection on Fifth Amendment grounds. On September 1, 2023, the Debtor filed his Brief (Doc. 189) and

served Amended Objections and Responses to the Subpoena, asserting Fifth Amendment objections for the first time.[2]

## **DISCUSSION**

### **I. A DEBTOR IN BANKRUPTCY CANNOT INVOKE THE FIFTH AMENDMENT TO PREVENT TURNOVER OF PROPERTY OR RECORDS OF THE ESTATE**

An extensive line of prior Supreme Court decisions has analyzed a debtor's attempt to invoke a Fifth Amendment privilege to avoid a turnover books and records. The Supreme Court held that records of a debtor in bankruptcy are not privileged under the Fifth Amendment. In the seminal case of *In re Harris,* 221 U.S. 274, 31 S.Ct. 557, 55 L.Ed. 732 (1911), an interim receiver in bankruptcy sought to require a debtor in bankruptcy to produce his books and records. The Supreme Court held the debtor could not claim the privilege regarding these papers. Justice Holmes summarized this:

> [N]o constitutional rights are touched. The question is not of testimony but of surrender—not of compelling the bankrupt to be a witness against himself in a criminal case, present or future, but of compelling him to yield possession of property that he is no longer entitled to keep. If a trustee had been appointed, the title to the books would have vested in him by the express terms of § 70 [of the Bankruptcy Act of 1898], and the bankrupt could not have withheld possession of what he no longer owned, on the ground that otherwise he might be punished. That is one of the misfortunes of bankruptcy if it follows crime. The right not to be compelled to be a witness against oneself is not a right to appropriate property that may tell one's story.

221 U.S. at 279–80, 31 S.Ct. at 558.

Two years later, the Supreme Court again dealt with this issue in *Johnson v. United States,* 228 U.S. 457, 33 S.Ct. 572, 57 L.Ed. 919 (1913). A debtor in bankruptcy was indicted and his conviction was based, in part, on the evidence of his own books and records that were surrendered to the trustee. Justice Holmes stated that, "(a) party is privileged from producing the evidence but not from its production. The transfer by bankruptcy is no different from a

---
[2] Debtor's third attorneys advised the undersigned for the very first time, in an email on July 31, 2023, that Debtor intended to raise Fifth Amendment objections to the AT&T Subpoena.

transfer by execution of a volume with a confession written on the flyleaf." 228 U.S. at 458, 33 S.Ct. at 572. The Supreme Court further stated:

> It is true that the transfer of the books may have been against the defendant's will, but it is compelled by the law as a necessary incident to the distribution of his property, not in order to obtain criminal evidence against him. Of course a man cannot protect his property from being used to pay his debts by attaching to it a disclosure of crime. If the documentary confession comes to a third hand *alio intuitu,* as this did, the use of it in court does not compel the defendant to be a witness against himself.

228 U.S. at 458–59, 33 S.Ct. at 572.

Similarly, an involuntary bankruptcy petition was filed against the debtors in the case of *Dier v. Banton,* 262 U.S. 147, 43 S.Ct. 533, 67 L.Ed. 915 (1923). The court ordered the debtors to turn over their property and records to the receiver in bankruptcy, and they complied. A district attorney sought the records, and the debtors sought an injunction against their use as violative of their Fifth Amendment rights. The Supreme Court held:

> **[T]he right of the alleged bankrupt to protest against the use of his books and papers relating to his business as evidence against him ceases as soon as his possession and control over them pass from him by the order directing their delivery into the hands of the Receiver and into the custody of the court.** This change of possession and control is for the purpose of properly carrying on the investigation into the affairs of the alleged bankrupt and the preservation of his assets pending such investigation, the adjudication of bankruptcy *vel non,* and if bankruptcy is adjudged, the proper distribution of the estate. It may be that the allegation of bankruptcy will not be sustained, and in that case, the alleged bankrupt will be entitled to a return of his property including his books and papers; and when they are returned, he may refuse to produce them and stand on his constitutional rights. But while they are, in the due course of the bankruptcy proceedings, taken out of his possession and control, his immunity from producing them, secured him under the Fourth and Fifth Amendments, does not enure to his protection. **He has lost any right to object to their use as evidence because, not for purpose of evidence, but in the due investigation of his alleged bankruptcy and the preservation of his estate pending such investigation, the control and possession of his books and papers relating to his business were lawfully taken from him.**

262 U.S. at 149–50, 43 S.Ct. at 534. (Emphasis added).

In *McCarthy v. Arndstein, supra,* the Supreme Court held that a debtor could assert his Fifth Amendment privilege against *examination* in a bankruptcy proceeding, but stated:

> The law requires a bankrupt to surrender his property. The books and papers of a business are part of the bankrupt estate.... To permit him to retain possession, because surrender might involve disclosure of a crime, would destroy a property right. The constitutional privilege relates to the adjective law. ***It does not relieve one from compliance with the substantive obligation to surrender property***.

266 U.S. at 41, 45 S.Ct. at 17 (citation omitted). (Emphasis added).

The Debtor rests his claim of privilege upon the "act of production" doctrine, arguing that his production of emails with his investors would tend to incriminate him in violation of the Fifth Amendment. As the Supreme Court has stated:

> Although the contents of a document may not be privileged, the act of producing the document may be. [*Fisher v. United States,* 425 U.S. 391, 410, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39 (1976).] A government subpoena compels the holder of the document to perform an act that may have testimonial aspects and an incriminating effect. As we noted in *Fisher:*
>
>> "Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer. It would also indicate the taxpayer's belief that the papers are those described in the subpoena." ... *Id.,* at 410 [96 S.Ct. at 1581].

*United States v. Doe,* 465 U.S. 605, 612–13, 104 S.Ct. 1237, 1242–43, 79 L.Ed.2d 552 (1984). In *Fisher,* the Internal Revenue Service subpoenaed the documents of two taxpayers; in each case, the documents had been created by a taxpayer's accountant and were held by the taxpayer's attorney. Both the taxpayers and their attorneys defended against enforcement of the subpoena on the grounds it violated the Fifth Amendment. After suggesting that the act of producing documents in compliance with the subpoena might fall within the purview of the Fifth Amendment, the Court continued:

> The elements of compulsion are clearly present, but the more difficult issues are whether the tacit averments of the taxpayer are both "testimonial" and "incriminating" for purposes of applying the Fifth Amendment. . . . In light of the records now before us, we are confident that however incriminating the contents of the accountant's workpapers might be, the act of producing them—

> the only thing which the taxpayer is compelled to do—would not itself involve testimonial self-incrimination.

425 U.S. at 410–11, 96 S.Ct. at 1581.

In a case directly on point, the Sixth Circuit addressed the production of personal documents of a debtor: "[T]here is no serious doubt that personal records of debtor exist. Further, it is a foregone conclusion, bordering on a tautology, that debtor has control of his personal records." *Butcher v. Bailey,* 753 F.2d 465, 469 (6th Cir.), *cert. dismissed,* 473 U.S. 925, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985) (holding that debtor's act of producing documents was not testimonial regarding either existence or possession of documents). *See also, In re Devereaux,* 48 B.R. 644, 645–46 (Bankr. S.D. Cal. 1985) (order for debtor to turn over all property of the estate to the trustee and to certify under penalty of perjury that she had done so did not violate Fifth Amendment); *In re Crabtree,* 39 B.R. 726, 731 (Bankr. E.D. Tenn. 1984) (turnover of assets is not testimonial, and thus not within scope of Fifth Amendment); *In re Kaufman,* 35 B.R. 26 (Bankr. D. Hawaii 1983) (debtor's privilege against self-incrimination was not infringed by requiring the debtor to turn over to the trustee all property of the estate).

The Debtor's act of producing his records does not infringe his Fifth Amendment rights. The Debtor's mere possession of his emails and text messages with investors is not criminal. He did not prepare them under governmental compulsion, and his possession of business records is not a crime. The request is for documents the Debtor is not entitled to keep because of a procedure he voluntarily invoked (*i.e.,* bankruptcy). Under Section 542 of the Bankruptcy Code, the Debtor was obligated to turn over those documents to the Trustee.

Similarly, production of the documents would not be testimonial by authenticating the documents. In rejecting the argument that compliance with a subpoena would violate the Fifth Amendment by implicitly authenticating the documents, *Fisher* again relied in part on *Harris:*

> Moreover, in *Wilson v. United States, supra; Dreier v. United States, supra; United States v. White, supra; Bellis v. United States, supra;* and *In re Harris, supra,* the custodian of corporate, union, or partnership books or *those of a bankrupt business* was ordered to respond to a subpoena for the business' books

> even though doing so involved a "representation that the documents produced are those demanded by the subpoena."

425 U.S. at 413, 96 S.Ct. at 1582 (emphasis added) (quoting *Curcio v. United States,* 354 U.S. 118, 125, 77 S.Ct. 1145, 1150, 1 L.Ed.2d 1225 (1957)). In a footnote, the Court stated "[i]n these cases compliance with the subpoena is required even though the books have been kept by the person subpoenaed and his producing them would itself be sufficient authentication to permit their introduction against him." 425 U.S. at 413 n. 14, 96 S.Ct. at 1582 n. 14. Therefore, even if the implicit testimony compelled by the act of production infringed on the Debtor's alleged Fifth Amendment rights—a conclusion this Court should reject—the nature of chapter 7 as a regulatory system that is not directed toward discovery of criminal behavior, prevents the implicit testimony from rising to levels subject to the Fifth Amendment privilege. *In re Ross*, 156 B.R. 272, 280 (Bankr. D. Idaho 1993).

In summary, the Fifth Amendment privilege may not be claimed by the Debtor with regard to papers of the estate for at least five (5) reasons. First, it provides no protection for the contents of documents. Second, the act of producing the documents here is not sufficiently testimonial or incriminating to come within the protection of the Fifth Amendment. Third, the Supreme Court in the *Harris* line of cases held that a bankrupt is not able to claim the privilege regarding documents relating to the estate. Fourth, even if the act of production might be testimonial by implicitly authenticating the documents, the Debtor has not made a positive disclosure to support invocation of the privilege. Finally, even if the act of production here was both testimonial and incriminating, the nature of chapter 7 as a regulatory regime renders the act of production outside the protection of the Fifth Amendment.

## II. THE DEBTOR HAS WAIVED ANY OBJECTION TO THE SUBPOENA ON FIFTH AMENDMENT GROUNDS

As a threshold matter, the Court must determine whether the Debtor has waived, or should be estopped from asserting, any objection on Fifth Amendment grounds. The Debtor waived his Fifth Amendment objection because: (1) he did not assert any such objection in response to the Rule 2004 Order; (2) he did not assert any such objection in the Written Objections in response to the Subpoena; (3) he produced some of his emails with investors

1  (just not all of them) both to the United States Trustee and directly to Defendants; and (4) the
2  documents sought are emails the Debtor sent to various third parties, and his sharing of these
3  communications with third parties waives any privilege he might have otherwise claimed had
4  he kept them to himself. Each of the foregoing facts, standing alone, are sufficient to
5  constitute waiver. But when viewed *in toto*, the waiver is undeniable, and the Debtor is
6  estopped from asserting a Fifth Amendment objection at such a late stage.

7  The Debtor's failure to assert any Fifth Amendment objection in response to the Rule
8  2004 Order, or in the Written Objections, constitutes a waiver. *Davis v. Fendler*, 650 F.2d
9  1154, 1160 (9th Cir. 1981) (the Fifth Amendment is not a self-executing mechanism, and it
10 can be affirmatively waived or lost by not asserting it in a timely fashion, and in the absence
11 of an extension of time or good cause, the failure to object constitutes a waiver of the
12 objection, even if the objection is one for privilege); *Samsung Elecs. Am. Inc. v. Yang Kun
13 "Michael" Chung*, 325 F.R.D. 578, 591 (N.D. Tex. 2017) (even where the party responding
14 to a discovery request has timely served some objections, waiver extends to any grounds not
15 stated in the timely objection). The Rule 2004 Order sought *all* the Debtor's emails and text
16 with investors, and the Debtor produced *some* of his emails to the United States Trustee
17 without raising a Fifth Amendment objection. Similarly, the Subpoena also sought *all* the
18 Debtor's emails and text messages with investors, and the Written Objections raised no Fifth
19 Amendment objections. The issue is simply that the Debtor did not produce *all* such emails.

20 The Debtor's Brief does not address his failure to assert a Fifth Amendment objection
21 in the Written Objections, or in response to the Rule 2004 Order. Rather, the Debtor only
22 argues there should be no waiver because his production of emails in the underlying
23 bankruptcy proceeding allegedly would not constitute a waiver in this adversary proceeding.
24 [Debtor's Brief, 189, pgs. 6-7]. However, not only was the Fifth Amendment objection not
25 raised in the Written Objections, or in response to the Rule 2004 Order, but the Debtor's
26 second law firm requested and obtained the entry of the Amendment to Protective Order *in
27 this adversary proceeding*. And thereafter, the Debtor produced documents directly to
28

Defendants on June 13, 2023, *in this adversary proceeding* in response to the Subpoena. Contrary to the Debtor's representation, he did not produce documents only in the underlying bankruptcy proceeding. The Debtor allowed nearly four (4) months to pass since serving the Written Objection until he finally asserted the Fifth Amendment objection in response to the Subpoena on September 1, 2023. Such a delay, coupled with the Debtor's express agreement to produce his emails with investors in this proceeding (and actual partial production thereafter), should preclude the Debtor from availing himself of any Fifth Amendment objection in response to the Subpoena.

Finally, the documents sought cannot be privileged by their very nature, because they are communications the Debtor sent to or shared with third parties. *In re P. Pictures Corp.*, 679 F.3d 1121, 1126-27 (9th Cir. 2012) (voluntarily disclosing privileged documents to third parties will generally destroy the privilege). The Debtor should be required to produce all communications with investors.

### III. THE "COLLECTIVE ENTITY" EXCEPTION TO ACT OF PRODUCTION DOCTRINE

The Debtor's invocation of the Fifth Amendment does not apply because the Subpoena sought emails that were sent or received on behalf of various entities in which the Debtor was a co-owner. Organized entities, as opposed to individuals, do not enjoy any privileges against self-incrimination under Fifth Amendment protections. *Braswell v. U.S.*, 487 U.S. 99, 104 (1988) (noting the Supreme Court has "long recognized that, for purposes of the Fifth Amendment, corporations and other collective entities are treated differently from individuals. This doctrine—known as the collective entity rule—has a lengthy and distinguished pedigree."). Accordingly, the "collective entity" exception to the act of production doctrine mandates the production of the communications sought in the Subpoena.

For example, in *In re Russo*, 550 S.W.3d 782 (Tex. Ct. App. 2018), the court held that subpoenaed emails of an executive of a limited liability company were not protected by the Fifth Amendment and he was required to produce them, even though he alleged that none of the emails were records of entities he owned or controlled, where there was evidence that the

emails were sent or received in the course of the entity's business and the executive stated in privilege logs that the documents related to "alleged kickbacks" and "alleged unreported related party transactions" that were paid or done with entities he allegedly owned or controlled. The court explained the "collective entity" exception whereby entities, such as corporations, are not protected by the Fifth Amendment. *Id*. at 788. An individual cannot rely upon the Fifth Amendment privilege against self-incrimination to avoid producing the records of a collective entity which are in the individual's possession in a representative capacity, even if these records might incriminate the individual personally. *Id*. The "collective entity" rule, that representatives of a collective entity act as agents, and the official records of the organization that are held by them in a representative rather than a personal capacity, applies even if a subpoena or document request is addressed to an individual who has custody of corporate records, rather than to the corporation. *Id*. "Corporate documents" not protected by the Fifth Amendment privilege against self-incrimination are (i) those prepared by an employee, officer, director, representative, or agent of the corporation in furtherance of his or her corporate duties and responsibilities, or (ii) those sent, received, used or maintained by an officer, director, employee, agent, or representative of the corporation in the course of its business. *Id*.

Similarly, in *U.S. v. Feng Juan Lu*, 248 Fed. Appx. 806, 807 (9th Cir. 2007), the defendant contended that her LLCs were not collective entities because she was the sole owner and operator and maintained no employees, and she was subject to individual, rather than corporate, tax liability for the profits and losses. *Id*. at 807. The Ninth Circuit rejected the argument that the Fifth Amendment applied because the collective entity doctrine focuses on the formality of the organizational structure, members' ability to access records, and the agent's representational role. *Citing, Bellis,* 417 U.S. at 92–93, 94 S.Ct. 2179. The court noted that single-member LLCs are hybrids of both corporations and sole proprietorships, but the defendant served as the statutory agent for her businesses, and she was free to add additional members which would implicate other aspects of collective entities. *Id.* The court stated:

> Further, Lu intentionally took advantage of the corporate characteristics of the LLC structure to obtain asset-protection advantages. In this situation, Lu's business documents are not personal to her because she clearly intended the businesses to be separate from her in the event of a lawsuit. Having chosen to organize her businesses as LLCs and obtain the benefits of that business structure, Lu cannot now disregard the creation of these separate entities to obtain Fifth Amendment protection for her companies' records.

*Id*. at 808.

Here, the Subpoena sought communications sent or received on behalf of any entities in which the Debtor was a co-owner, including but not limited to, Buddy's Renovation and Handyman Services LLC ("**Buddy's**"), CMC Industries LLC, CKE Holdings LLC, CKE Management LLC, CKE Fund Management LLC, CKE Realty Fund LP, and any of the Debtor's other businesses in which he is or was an owner or co-owner. Furthermore, these entities are not even single-member entities as was the case in *U.S. v. Feng Juan Lu*. Rather, the Debtor was a co-owner with other individuals. The Debtor's various investors and creditors entered into Partnership Agreements with the Buddy's entity, and the Debtor communicated with creditors on behalf of the various entities, including from an @buddysreno.com email address. Even the Debtor's communications from his personal Gmail accounts were on behalf of various entities. As such, the "collective entity" exception mandates the production of emails sent or received on behalf of these entities.

### IV. THE FIFTH AMENDMENT DOES NOT PROTECT CONTENTS OF PRE-EXISTING RECORDS SUCH AS EMAILS BECAUSE THEIR CREATION WAS NOT COMPELLED AND THEIR PRODUCTION IS NOT TESTIMONIAL

The Debtor voluntarily sent and received the communications at issue. As such, the Fifth Amendment does not apply because the Subpoena does not *compel* his *testimony*. It does not protect against compliance with a subpoena for pre-existing records because the creation of the records was not compelled. *See United States v. Doe,* 465 U.S. 605, 610, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984); *Fisher v. United States,* 425 U.S. 391, 409–10, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *United States v. Gendreau,* No. 12–mc–303, 2014 WL 464754, at *2 (S.D.N.Y. Jan. 22, 2014); *SEC v. Ryan,* 747 F.Supp.2d 355, 363 (N.D. N.Y. 2010).

1    As the Supreme Court noted in *Fisher,* the Fifth Amendment protects the person asserting the privilege only from *compelled* self-incrimination. 96 S.Ct., at 1573. Where the preparation of business records is voluntary, no compulsion is present. *U.S. v. Doe*, 465 U.S. 605, 610 (1984). "A subpoena that demands production of documents 'does not compel oral testimony; nor would it ordinarily compel the [producing party] to restate, repeat, or affirm the truth of the contents of the documents sought.'" *Id*., citing *Fisher,* 96 S.Ct., at 1580.

In *U.S. v. Doe*, the Supreme Court held that where an owner of sole proprietorships did not claim that he prepared business records involuntarily or that subpoenas demanding production of certain business records of several of his companies would force him to restate, repeat, or affirm the truth of the records' contents, then the contents of the subpoenaed records in question were not privileged under the Fifth Amendment. *Id*. at 611-12. "If the party asserting the Fifth Amendment privilege has voluntarily created the document, no compulsion is present and the contents of the document are not privileged." *Id*., at n. 10. See also *In re Connelly*, 59 B.R. 421, 440 (Bankr. N.D. Ill. 1986) (holding that chapter 7 debtor could not refuse to surrender documents to trustee merely because particular piece of recorded information contained incriminating writing, his own or someone else's; due to absence of compulsion, contents of preexisting voluntarily prepared documents are not privileged under Fifth Amendment from turnover to chapter 7 trustee); *Martin v. State*, 570 S.W.3d 426 (Tex. Ct. App. 2019) (for purposes of privilege against self-incrimination, production of a preexisting document does not compel the defendant to restate, repeat, or affirm the truth of the contents of the documents); *U.S. v. Navarro*, 2023 WL 2424625 (D.D.C. Mar. 9, 2023) (holding that the production of pre-existing emails contained in a personal email account of a former advisor to a former President was not testimonial in nature, and thus did not implicate Fifth Amendment right against self-incrimination; production of pre-existing emails did not compel oral testimony or compel the former advisor to restate, repeat, or affirm the truth of the contents of the emails).

Here, the Debtor voluntarily created and sent communications to his investors in the ordinary course of his business and their contents are not protected by the Fifth Amendment because their creation was not compelled, and their production is not testimonial. The Debtor argues that "if any relevant communications are in Mr. Cook's possession or control, the very act of producing such communications could potentially incriminate Mr. Cook." [Debtor's Brief, pg. 6]. However, the Debtor has not cited any caselaw in support of this argument.

A rudimentary example of a potentially correct application of the law is the crime of possession of child pornography. If a subpoena directs someone to "produce all child pornography in your possession," that person may invoke the Fifth Amendment because (1) mere possession of that material is a crime and the mere act of producing those materials would incriminate that person in a crime; and (2) the producing party would be implicitly testifying or tacitly conceding his belief that the materials produced are responsive to the subpoena and constitute child pornography. In contrast, it is not a crime to possess emails with investors, even if the contents of those emails contain fraudulent statements or misrepresentations. As such, the Debtor's mere act of producing the communications sought here would not implicitly compel the Debtor's testimony as to their existence, possession, or authenticity. *People v. Sneed*, 2023 IL 127968 (Ill. 2023) (the "act of production doctrine" allows a person to assert his Fifth Amendment privilege against self-incrimination where mere act of production itself, *as opposed to content of what is being produced*, has testimonial implications); *Matter of Residence in Oakland, California*, 354 F. Supp. 3d 1010 (N.D. Cal. 2019) (a witness' act of production itself could qualify as testimonial protected by the Fifth Amendment if conceding the existence, possession and control, and authenticity of the documents tended to incriminate them); *Baltimore City Dept. of Soc. Services v. Bouknight*, 493 U.S. 549, 555 (1990) ("But a person may not claim the Amendment's protections based upon the incrimination that may result from the contents or nature of the thing demanded.").

## V. THE "FOREGONE CONCLUSION" EXCEPTION TO ACT OF PRODUCTION DOCTRINE

The Debtor's Brief failed to discuss any of the foregoing exceptions to the act of production doctrine, instead choosing only to argue that the "foregone conclusion" exception does not apply. The foregone conclusion doctrine is an application of the Fifth Amendment "by which the Government can show that no testimony is at issue." *Matter of Residence in Oakland, California*, 354 F. Supp. 3d 1010, 1016–17 (N.D. Cal. 2019), citing *In re Grand Jury Subpoena Duces Tecum Dated Mar. 25, 2011*, 670 F.3d 1335, 1343 n. 19 (11th Cir. 2012). Specifically, "[w]hen the 'existence and location' of the documents under subpoena are a 'foregone conclusion' and the witness 'adds little or nothing to the sum total of the Government's information by conceding that he in fact has the [documents],' then no Fifth Amendment right is touched because the 'question is not of testimony but of surrender.'" *Id*, citing *In re Grand Jury Subpoena, Dated Apr. 18, 2003*, 383 F.3d 905, 910 (9th Cir. 2004) (quoting *Fisher v. United States*, 425 U.S. 391, 411, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976)). The government is "not required to have actual knowledge of the existence and location of each and every responsive document; the government [is] required, however, to establish the existence of the documents sought and [] possession of them with 'reasonable particularity' before the existence and possession of the documents [can] be considered a foregone conclusion and production therefore would not be testimonial." *In re Grand Jury Subp., Dated April 18, 2003*, 383 F.3d 905, 910 (9th Cir. 2004).

Here, the existence of the Debtor's communications with his investors is merely a foregone conclusion. First, the Debtor himself produced *some* of his mails with investors to the Defendants. Contrary to his argument that these were only produced in the bankruptcy proceeding (Brief, pgs. 6-7), the Debtor produced these directly to Defendants in this adversary proceeding on June 13, 2023, after negotiating the entry of the Amendment to Protective Order. As such, Defendants are already aware that the Debtor was communicating with investors. The issue is that he simply did not produce *all* of his communications. (The

Defendants also know this because various third-party investors produced emails with the Debtor in response to subpoenas, which the Debtor failed to produce).

Second, the universe of investors with whom the Debtor communicated is finite. Many of them filed proofs of claims in the Debtor's bankruptcy, their existence is known, and thus, the scope of communications with these investors is "reasonably particular." For example, the Trustee seeks to recover amounts for claims asserted against the Debtor, *see* Third Amended Complaint, Docket No. 139, ¶ 40.[3] The Defendants are not required to have actual knowledge of the existence of every responsive document, but rather merely articulate the Debtor's possession of them with "reasonable particularity." *In re Grand Jury Subp., Dated April 18, 2003*, 383 F.3d at 910. Because the Debtor's communications with investors is a foregone conclusion and the identities of these investors are known with reasonable particularity, the Debtor cannot stand on the "act of production" doctrine under the Fifth Amendment to prevent the production of all of his communications with his investors.

## VI. THE DEBTOR SHOULD BE REQUIRED TO SUBMIT ALLEGEDLY PRIVILEGED DOCUMENTS FOR IN CAMERA INSPECTION

The Debtor has obstructed the turnover of his emails and texts since April 24, 2023. If the Court does not find any of the foregoing exceptions or caselaw sufficient to overcome the untimely invocation of the "act of production" objection, then the Debtor should be required to submit any communications he is withholding on Fifth Amendment grounds to this Court for *in camera* inspection and specify how their production would incriminate the Debtor. It is the Court that must make the ultimate determination, rather than simply taking the Debtor at his word. *U.S. v. Bright*, 596 F.3d 683 (9th Cir. 2010) (*in camera* review of documents requested by an Internal Revenue Service (IRS) summons does not destroy the protected nature of the contested communications, under the Fifth Amendment privilege against self-incrimination); *In re Connelly*, 59 B.R. 421, 433 (Bankr. N.D. Ill. 1986) (it is incumbent upon court to conduct a proper inquiry into legitimacy as to scope of blanket

---

[3] For the avoidance of doubt, however, there are additional claimants in the Debtor's bankruptcy that the Trustee does not include in paragraph 40, and they are knowable by review of the claims register.

assertion of Fifth Amendment privilege); *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981) (holding that district court did not err in finding failure to support claim of Fifth Amendment privilege, and noting that "[i]t is evident that the determination of whether the privilege has been properly invoked is for the district judge. The claimant is not the final arbiter of the validity of his assertion. A proper assertion of a Fifth Amendment privilege requires, at a minimum, a good faith effort to provide the trial judge with sufficient information from which he can make an intelligent evaluation of the claim.").

### VII. MECHANICS OF COLLECTION AND SURRENDER

The Court should compel the Debtor to perform a more thorough search to produce *all* of his emails with investors. Given the Debtor's obstruction and delay, Defendants request that a neutral third party perform the collection process to ensure that no further emails are withheld or destroyed by the Debtor. The Court should also order the Debtor to turn over the cellphones that he used for texts with investors. Regardless of their condition, a data collection company may still be able to recover text messages. In addition, as the Debtor used an iPhone, the text messages may also still be accessible via Apple, or some other iMessage retention system.

Given that the Trustee has accused the Debtor of being the "ringleader" of a criminal enterprise that allegedly perpetrated a Ponzi scheme, it is unfathomable that the Trustee did not collect and preserve these emails and texts, and instead allowed the Debtor to determine what documents he would produce. It should have been readily apparent that the Debtor did not produce all such communications, and the Trustee should have taken steps to obtain these three years ago. The Trustee should also have obtained login information for the Debtor's email accounts and preserved all communications relevant to the Trustee's own litigation against Defendants. The Trustee also should have obtained backups of hard drives of computers, cell phones, and email accounts. Defendants cannot over-emphasize the prejudice caused by the Trustee's failures. Simply put, some of the most crucial categories of documents are missing, or worse, have been lost forever.

**WHEREFORE**, Defendants respectfully request that the Court order: (i) the Debtor to surrender his cell phone so that Defendants may determine whether the Debtor's text messages with investors are recoverable; (ii) the collection and production of the Debtor's emails with investors; (iii) such other and further relief as is just and proper in favor of Defendants.

RESPECTFULLY SUBMITTED this 15th day of September, 2023.

                                      POLSINELLI PC

                                      By: */s/ Michael Campbell*
                                            Michael A. Campbell
                                            Matthew S. Layfield
                                            Nick A. Griebel
                                            *Attorneys for Defendants Valliance Bank,*
                                            *Shelby Bruhn, and Katherine S. Bruhn*

I hereby certify that on September 15, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants, which constitutes service, pursuant to L.R. Bankr. P. 9076-1:

*/s/ Rebecca O'Brien*